232 N.J. Super. 569 (1989)
557 A.2d 1045
BRAD LEE, PLAINTIFF-APPELLANT,
v.
JOHN DOE (A FICTITIOUS NAME), ROBERT MORGAN, OFFICER JAMES DOE (A FICTITIOUS NAME), OFFICER JOE DOE (A FICTITIOUS NAME), CAMDEN CITY POLICE DEPARTMENT AND THE CITY OF CAMDEN, I/J/S/A, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 21, 1989.
Decided May 8, 1989.
*570 Before Judges O'BRIEN, SCALERA and STERN.
Console, Marmero, Livolsi, Wood, Curcio, Morelli & Mammano, attorneys for appellant (Edward C. Curcio on the brief).
Montano, Summers, Mullen, Manuel, Owens & Gregorio, attorneys for respondents (F. Herbert Owens, III, of counsel; Andrew J. Brekus, on the brief).
The opinion of the court was delivered by STERN, J.A.D.
This appeal requires us to decide whether police officers and their employing municipalities are immune from civil liability under the Tort Claims Act when the officers decline to take *571 action in response to claims of wrongdoing made by a complaining witness who is subsequently injured by the alleged perpetrator. Because there are no material facts in dispute and the Tort Claims Act provides such immunity, we affirm the grant of summary judgment in favor of defendants.
On May 27, 1985 plaintiff was hosting a "cook-out" at his home located in Camden. His fiancee's brother, Robert Morgan, was an invited guest. After having several beers, Morgan left the party and returned later with his girl friend, his girl friend's sister and several others, all of whom arrived without invitations.
After the arrival of the uninvited guests, Morgan's nephew, the son of plaintiff's fiancee, criticized Morgan for bringing uninvited guests to the cook-out. An argument ensued during which Morgan produced a knife and threatened to kill his nephew. Plaintiff thereupon grabbed Morgan, told him that he wasn't going to let him go until he calmed down, and ultimately directed him to leave. As Morgan left, he stated that he was going to come back and kill both his nephew and the plaintiff.
As a result of Morgan's threats, the Camden Police were called, and two officers came to the house, but stayed only several minutes. A short while after they left, Morgan returned to the house with a shotgun, went to the front porch, and said that he wanted plaintiff to come outside because he "had something for him." Plaintiff's fiancee again called the police, and Morgan ran off. When two officers responded to the call, plaintiff asked one of them to stay and patrol the area. The officer declined to do so and told plaintiff not to worry.[1]
A few minutes later Morgan again returned and tried to enter the front door. Plaintiff attempted to slam the door *572 before Morgan could enter, but Morgan succeeded in sticking the barrel of the gun through the doorway and fired the weapon, severely injuring plaintiff in the leg.
In his complaint, plaintiff specifically alleged that the two police officers who came to the house the second time "failed to respond to a call for aid in a reasonable and professional manner and after responding, acted in a negligent and unprofessional manner, failed to search for and apprehend the defendant Morgan, [and] failed to peruse and secure the area for the defendant Morgan, resulting in plaintiff's injuries...." Plaintiff further charged that this alleged negligence was imputable to the City of Camden and the City of Camden Police Department.
In his preliminary report, plaintiff's expert reviewed the two officers' conduct and concluded that
the Camden Police Officers who responded to the call at the Lewis Street residence acted totally improperly and unprofessionally and in a grossly negligent manner and in violation of accepted standard police practices, therefore causing the injuries suffered by Brad Lee ...
After hearing oral argument on defendants' motion for summary judgment, Judge Charles A. Little in the Law Division ruled that the police officers were immune from action under N.J.S.A. 59:5-5 and thus dismissed plaintiff's suit with prejudice.[2] This appeal follows.
The thrust of plaintiff's argument is that the immunity does not apply under the facts of this case, because once the officers responded to the request for aid they became subject to liability for negligence in the performance of their duties. Plaintiff also asserts the officers were negligent by doing nothing more than telling him not to worry because Morgan probably would not return. Defendants argue that the trial judge properly granted summary judgment based upon the immunity conferred by N.J.S.A. 59:5-5.
*573 The Supreme Court recently reviewed the legislative purpose underlying the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. (hereinafter referred to as "Tort Claims Act" or "the Act") as well as the Act's general provisions establishing both liability and immunity. See Rochinsky v. State, Department of Transportation, 110 N.J. 339 (1988). As Justice Stein noted in Rochinsky, the law became effective on July 1, 1972 and contained the following legislative declaration:
The Legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration. [110 N.J. at 406-07 quoting N.J.S.A. 59:1-2 (emphasis supplied)].
The first substantive section of the Act, N.J.S.A. 59:2-1, more generally expresses this public policy and "establishes the analytical framework to be used in resolving questions of governmental immunity." Rochinsky, supra, 110 N.J. at 407. It provides:
a. Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
b. Any liability of a public entity established by this act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person. [N.J.S.A. 59:2-1].
The Comment to this section reveals the Legislature's goal in passing the Act. As Justice Stein explained in Rochinsky, supra, 110 N.J. at 407:
The Comment to this section reveals the Legislature's overriding objective. It states that N.J.S.A. 59:2-1(a) "provides that the basic statutory approach of the [Act] shall be that immunity of all governmental bodies in New Jersey is re-established." In drafting section 2-1(a) the Legislature expressly adopted the reasoning of the California Law Revision Commission which is embodied in the California Tort Claims Act, Cal. Gov't Code § 810 et seq. The paramount *574 concern was that a statute imposing general liability, limited only by specific statutory immunities, would provide public entities with little basis on which to budget for the payment of claims and judgments for damages. The Comment rejected the concept of a statute that imposed liability with specific exceptions, expressing concern that such a statute would greatly increase the amount of litigation and the attendant expense that public entities would face. Instead, the Attorney General's Report recommended legislation providing "that public entities are immune from liability unless they are declared to be liable by an enactment." N.J.S.A. 59:2-1 Task Force Comment.
The Legislature specifically rejected the rationale favoring governmental liability expressed in B.W. King [v. West New York], 49 N.J. 318 [(1967)] observing that this approach is no longer necessary in light of this comprehensive Tort Claims Act. Rather the approach should be whether an immunity applies and if not, should liability attach. It is hoped that in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities.' [N.J.S.A. 59:2-1 Task Force Comment (emphasis supplied).]
Subsection 2-1(b) reflects the Legislature's intent to preserve common-law immunities:
Subsection (b) is intended to insure that any immunity provisions provided in the act or by common-law will realistically interpret both the statutory and common law immunities in order to effectuate their intended scope. [N.J.S.A. 59:2-1 Task Force Comment (emphasis supplied).]
[110 N.J. at 407-408 (emphasis in original; footnote omitted)].[3]
Accordingly, the Supreme Court has made clear our obligation in terms of review of issues under the Tort Claims Act:
We have held that the plain meaning of N.J.S.A. 59:2-1 firmly establishes that "immunity is the dominant consideration of the Act." Kolitch v. Lindedahl, 100 N.J. 485, 498 (1985) (O'Hern, J., concurring); accord Birchwood Lakes Country Club v. Medford Lakes, 90 N.J. 582, 596 (1982). Even when one of the Act's provisions establishes liability, that liability is ordinarily negated if the public entity possesses a corresponding immunity. See Malloy v. State, 76 N.J. 515, 521 (1978) (giving priority to licensing function immunity provided by N.J.S.A. 59:2-5 over liability established by N.J.S.A. 59:2-2); see also Costa v. Josey, 83 N.J. 49, 61 (1980) (Clifford, J., dissenting) (finding Comment to section 2-1(b) to be "as explicit as possible").
Section 2-1(b) establishes the principle that even common-law and statutory immunities not contained in the Act can prevail over the Act's liability provisions. [citations omitted] [Id. 110 N.J. at 408-409]
The Tort Claims Act provides specific statutory immunity in addition to the general provisions regarding liability and *575 immunity. See N.J.S.A. 59:2-1 through 59:4-9. Two specific provisions, located in chapter 5 of the Act, are most relevant to the present controversy.
The first relates to failure to provide police protection:
Neither a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service. [N.J.S.A. 59:5-4].
This provision was comprehensively analyzed by this court in Suarez v. Dosky, 171 N.J. Super. 1 (App.Div. 1979), certif. denied, 82 N.J. 300 (1980), in which we affirmed the trial court's judgment for the plaintiff. In Suarez we considered the scope of a police officer's liability, or immunity, for negligence in the performance of his job. At issue was the liability of two state troopers for the death of the plaintiff's decedent, who was forced to walk off a highway on which she was involved in an accident because the troopers declined to escort the occupants of the vehicle notwithstanding their requests for an escort or that the officers radio a taxi. 171 N.J. Super. at 5-6. The accident occurred on Interstate 80, and plaintiff's decedent was tragically killed while trying to rescue or recover the body of a child who was killed on the roadway.
Speaking through Judge Morgan, we first rejected the State's contention that N.J.S.A. 59:5-4 provided a "full and complete immunity from all tort liability arising out of acts or omissions of the police in the performance of their official duties." Id. at 7. We reasoned, in part, that the "`broad and pervasive' immunity" which the State urged was embodied in N.J.S.A. 59:5-4 would make the immediately following provision, N.J.S.A. 59:5-5, "entirely superfluous." Id. at 8. We questioned the need for a specific immunity for failure to arrest, which N.J.S.A. 59:5-5 provides, if section 59:5-4 were interpreted to grant the police broad and pervasive immunity. Ibid. Finally, analogizing section 59:5-4 to both the comparable California statute and to N.J.S.A. 59:5-1, which parallels section 59:5-4 in the context of providing prison facilities, id. at 8-9, we concluded

*576 that N.J.S.A. 59:5-4, precludes suits against municipalities and their responsible officers based upon contentions that damage occurred from the absence of a police force or from the presence of an inadequate one. How many officers a town should employ, how each should be equipped and whether a town should have any police at all are political decisions which should not be made the subject of any tort duty.

N.J.S.A. 59:5-4, therefore, has no application to this case. Although a police officer may not be liable for failing to respond (if, for example, he was performing some other official duty), if he does respond he will be subject to liability for negligence in the performance of his ministerial duties. N.J.S.A. 59:5-4 does not insulate police officers from unfortunate results of their negligently executed ministerial duties. NeCasek v. Los Angeles, 233 Cal. App.2d 131, 134, 43 Cal. Rptr. 294, 297 (D.Ct.App. 1965). [171 N.J. Super. at 9-10].[4]
See also Rodriguez v. New Jersey Sports & Exposition Authority, 193 N.J. Super. 39, 42-43 (App.Div. 1983), certif. denied, 96 N.J. 291 (1984) (State Sports Authority immune from liability for assault upon and robbery of patron resulting from alleged failure to provide police protection or failure to provide sufficient police protection); Shore v. Housing Authority of Harrison, 208 N.J. Super. 348 (App.Div. 1986) (municipality not immunized from liability where security guard allegedly failed to perform assigned duty to patrol housing project in order to socialize with friends). Compare Vanchieri v. New Jersey Sports and Exposition Auth., 104 N.J. 80 (1986). Accordingly, we agree with the motion judge that N.J.S.A. 59:5-4 does not afford a basis for public entity or public employee immunity in this case.
N.J.S.A. 59:5-5 relates to the failure to make an arrest or retain a person arrested in custody. It provides:
Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody.
There are only two reported decisions in New Jersey specifically addressing this provision. See Wuethrich v. Delia, 134 N.J. Super. 400 (Law Div. 1975) (Wuethrich I), and Wuethrich v. *577 Delia, 155 N.J. Super. 324 (App.Div. 1978) (Wuethrich II). In the Wuethrich cases, notification was given to the Berkeley Heights Police Department that defendant Delia was menacing certain persons with a firearm within a short distance of police headquarters. The police made no response to these warnings. Less than 12 hours later, "in that same area," Delia shot and killed the plaintiff's husband. Wuethrich I, 134 N.J. Super. at 405.
In Wuethrich I, the trial judge denied the defendant township's motion for judgment for failure to state a claim upon which relief can be granted. Id. at 415. He determined that the Act's general immunity provisions did not insulate the municipality from potential liability in these circumstances, finding "that once the police had received warnings as alleged by plaintiff, their obligation to investigate was clear. It was not discretionary but ministerial." Id. at 411. The court concluded that the Tort Claims Act as a whole, including "a fair reading of" N.J.S.A. 59:2-4, 59:5-4 and 59:5-5, "indicates absolute immunity for higher-level discretionary acts, and not for those of individual police officers whose actions may be partly discretionary and partly of a ministerial nature (as defined in the comment to N.J.S.A. 59:2-3)." Id. at 412-413. Cf. Bosch v. Hain, 184 N.J. Super. 204 (Law Div. 1982) (regarding N.J.S.A. 59:2-4).[5] The court interpreted N.J.S.A. 59:5-5 to provide, for example, that "neither the public entity nor the employee is liable although police may have been given a precise description of a suspect yet were unable to apprehend him before he committed another crime", 134 N.J. Super. at 412 (emphasis in original).[6] We did not review that rationale or determination.
*578 Following completion of discovery, summary judgment was subsequently granted, and we affirmed dismissal of the complaint in Wuethrich II. We stated there that while "police officers have a duty to investigate information from citizens concerning unlawful or criminal activity, the failure of the police to make an arrest as a consequence of an investigation does not subject the municipality to tort liability." Id. at 325-326, citing N.J.S.A. 59:5-5. We further stated that "[m]unicipalities are expressly immunized from tort liability for the failure to provide police protection or the failure to provide sufficient police protection. N.J.S.A. 59:5-4. A public entity such as a municipality is not liable in tort for its failure to protect against the criminal propensity of third persons. Setrin v. Glassboro State College, 136 N.J. Super. 329 (App.Div. 1975)." 155 N.J. Super. at 326. Irrespective of the particular section on which we may have relied, we expressly rejected plaintiff's argument that the provisions of N.J.S.A. 59:2-2 (liability of public entity) and 59:2-3 (discretionary activities) "diminish the explicit grant of immunity contained in N.J.S.A. 59:5-4 and 59:5-5." 155 N.J. Super. at 326.
As noted in Rochinsky, our Tort Claims Act was patterned on the California statute, and we accordingly look to the law of that State in interpreting our law. See State v. Ramseur, 106 N.J. 123, 204 (1987); S.E.W. Friel Co. v. New Jersey Turnpike Authority, 73 N.J. 107, 122 (1977).
Section 59:5-4 of the New Jersey Tort Claims Act was modeled after section 845 of the California Tort Claims Act. Both sections are entitled "Failure to provide police protection" and are worded almost identically. The California statute provides "[n]either a public entity nor a public employee is liable for failure to establish a police department or otherwise provide *579 police protection service or, if police protection service is provided, for failure to provide sufficient police protection service." Cal. Gov't Code § 845. The Law Revision Commission Comment to section 845 indicates that the section was designed to prevent political decisions of policy-making officials of government from being second-guessed by judges and juries in personal injury litigation. It states that "[t]o permit review of these decisions by judges and juries would remove the ultimate decision-making authority from those politically responsible for making the decisions." Cal. Gov't Code § 845, Law Revision Commission Comment. See also Leger v. Stockton Unified School Dist., 202 Cal. App.3d 1448, 249 Cal. Rptr. 688 (1988); Mann v. State, 70 Cal. App.3d 773, 139 Cal. Rptr. 82 (1977). California's reported cases basically hold that section 845 affords immunity to the police even where they unreasonably perform their duties, provided police did not engage in conduct which gives rise to a special relationship with the victim, such as if the police officer caused the victim to rely on him for protection or the police officer otherwise increased the risk of injury to the victim. See, e.g., Davidson v. City of Westminster, 32 Cal.3d 197, 185 Cal. Rptr. 252, 649 P.2d 894 (1982) (immunity where persons assaulted by individual under surveillance by police); Lopez v. City of San Diego, 190 Cal. App.3d 678, 235 Cal. Rptr. 583 (1987) (city and its officials immune with respect to deaths and injuries resulting from random shooting at McDonald's restaurant despite alleged police negligence "in failing to exercise reasonable care in responding to and handling the crisis ..." 235 Cal. Rptr. at 584); Hucko v. City of San Diego, 179 Cal. App.3d 520, 224 Cal. Rptr. 552 (1986) (police officer was under no legal duty to use due care to recognize signs of intoxication and take steps to prevent a motorcyclist from continuing to drive; therefore, the motorcyclist could not recover for his injuries based on alleged negligence of the officer); Von Batsch v. American District Telegraph Co., 175 Cal. App.3d 1111, 222 Cal. Rptr. 239, 244-47 *580 (1985) (police officers who responded to a burglar alarm at a business premises and proceeded to investigate the premises did not voluntarily undertake any special duty to protect the president of the corporation, who was subsequently slain by the intruders). See also Lopez v. Southern California Rapid Transit District, 40 Cal.3d 780, 221 Cal. Rptr. 840, 710 P.2d 907 (1985) (Transit District not immune from liability for injuries resulting from an assault on bus passengers by fellow passengers, under facts as alleged in the complaint).[7]
The California parallel provision to New Jersey's N.J.S.A. 59:5-5 is Cal. Gov't Code § 846 which, like N.J.S.A. 59:5-5, is entitled "Failure to make arrest or to retain person arrested in custody". Section 846, like the New Jersey equivalent, provides "[n]either a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody."[8]
The California case law applying section 846 to municipal tort claims appears to utilize the same approach and special relationships *581 test employed under section 845. See Williams v. State, 34 Cal.3d 18, 192 Cal. Rptr. 233, 664 P.2d 137 (1983) (In Banc) (the state highway patrol has the right, but not a duty, to investigate accidents or to come to the aid of stranded motorists, except that once its agents voluntarily assume a protective duty towards certain members of the public and undertake action on behalf of that member thereby inducing reliance, it is held to the same standard of care as a private person or organization); Sunnyvale v. Superior Court (Ragan), 203 Cal. App.3d 839, 250 Cal. Rptr. 214 (1988) (city police officers, who stopped an automobile and issued citations to  but did not arrest or take into custody  the driver for driving at an unsafe speed and driving with an open container in the vehicle and to a passenger for being a minor in possession of alcohol, were not liable for failing to advise a second passenger, as to whom there was no special relationship, of risks of remaining in car); Hucko v. City of San Diego, supra.
In sum, the California law, based on its Tort Claims Act, provides that, except where there exists some special relationship created by the police for the purposes of protecting an individual, the police and their employing government entity will be immune from liability for injuries stemming from negligent conduct or inaction by a police officer.
California's interpretation of the law appears to be in harmony with the purpose underlying the New Jersey Act. In any event, we believe that proper interpretation of N.J.S.A. 59:5-5 requires the grant of immunity from liability here. Even under plaintiff's version of the facts there existed no special relationships between plaintiff and the Camden police officers. The officers neither increased plaintiff's risk of harm nor indicated that they intended to look out for him, thereby inducing reliance upon their protection.
Accordingly the grant of summary judgment is affirmed.
NOTES
[1] In a written statement dated October 22, 1986 Ralph Johnson, a friend of plaintiff who was at the cook-out, explained that he heard plaintiff tell the police about the shotgun and requested the police to stay in the area to be sure Morgan would not come back.
[2] The other defendants were never served, and therefore we review a final judgment.
[3] We read this portion of the opinion to represent the views of at least five members, if not the entire court.
[4] Having found that the police officers were not immune from liability, the Suarez court also considered the issue of proximate cause.
[5] N.J.S.A. 59:2-4 provides:

A public entity is not liable for an injury caused by adopting or failing to adopt a law or by failing to enforce any law.
[6] Wuethrich I was not "concerned with the failure of the police to apprehend or to arrest defendant Delia in the sense of taking him into custody for the purpose of holding or detaining him to answer a criminal charge...." Rather, the court was "concerned with the failure of the police to investigate the complaint duly received at headquarters about [a specifically identified armed man] in the immediate vicinity of police headquarters making threats of imminent harm to identified persons." Id. at 413.
[7] There appears to be a difference between California and New Jersey regarding the approach to immunity problems. In New Jersey the approach is whether an immunity applies and if not, whether liability should attach. Rochinsky, 110 N.J. at 407. However, in California, "the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." Davidson v. Westminster, 32 Cal. App.3d at 201, 185 Cal. Rptr. at 254, 649 P.2d at 896; see also Williams v. State, 34 Cal.3d 18, 192 Cal. Rptr. 233, 235, 664 P.2d 137, 139 (1983); Lopez supra, 221 Cal. Rptr. at 842, 710 P.2d at 909. The Lopez court held that § 845 might be applicable as the facts "unfold during discovery and at trial." 221 Cal. Rptr. at 850, 710 P.2d at 917.
[8] The Law Revision Commission Comment to this section states that section 846 is a "specific application of the principle stated in section 818.2 and 821." Cal. Gov't Code § 818.2 is entitled "Adoption or failure to adopt or enforce enactment" and relates to public entities, while Cal. Gov't Code § 821, also entitled "Adoption or failure to adopt or enforce enactment", relates to public employees. These provisions parallel N.J.S.A. 59:2-4 and N.J.S.A. 59:3-3, respectively.