631 So.2d 902 (1993)
CITY OF BIRMINGHAM
v.
Frederick B. BENSON, father of Blair Benson, a deceased minor.
1921322.
Supreme Court of Alabama.
December 22, 1993.
*903 Demetrius C. Newton, Thomas Bentley III and John M. Edens, Birmingham, for appellant.
D. Leon Ashford, Scott A. Powell and Bruce J. McKee of Hare, Wynn, Newell & Newton, Birmingham, for appellee.
HOUSTON, Justice.
The City of Birmingham ("the City") appeals from a $1.6 million judgment rendered against it in an action filed by Frederick B. Benson based on the alleged wrongful death of his minor son, Blair Giles Benson ("Blair"). The City's liability is predicated upon the activities of James S. Vining, a Birmingham police officer, while he was engaged in part-time employment as a security guard at Gene's Jukebox ("the bar") in Birmingham, Alabama. Benson alleges that in the part-time employment Vining was acting as the City's agent, servant, or employee.
It was undisputed that on the night of December 14, 1990, Vining was at the bar in full police uniform, with radio, gun, nightstick, flashlight, handcuffs, and mace, and that Vining, in accordance with the rules and regulations of the Birmingham Police Department, had notified his supervisor that he was working as a security guard at the bar. It was undisputed that among minors it was common knowledge that minors could purchase alcoholic beverages at the bar; and it was undisputed that minors (16, 17, 18, and 19 years old) were being served alcoholic beverages at the bar while Vining was at the bar as a security guard. It was further undisputed that on that night of December 14, Vining was aware of growing tension in the bar between Blair and Billy Weidler.
The evidence, viewed most favorably toward the plaintiff, for whom the jury found, as it must be viewed under our standard of review (although much of this evidence is also undisputed), indicates that Blair was threatened by Weidler and that afterwards Blair asked Vining to escort him and three minors who were with Blair to their car. Vining repeatedly told them that they could not fight inside the bar. Vining escorted the four, including Blair, outside. A large crowd followed Vining out the door. As Blair and his three friends crossed 22nd Street, Vining stood on the sidewalk; Weidler asked him what he was going to do. Vining replied: "I don't care what you do, I am going back inside." At that time, a group of people (at least 15), including Weidler and Sean Brooks, chased the four and pulled Blair, who was halfway in the car, out of the car and beat him for 5 to 10 minutes. Blair was knocked down, kicked, and run over by the car in which his friends were trying to leave. Blair died; the cause of his death was "asphyxiation, shock, and cardiac arrest as complications of severe multiple blunt force trauma." *904 Weidler and Brooks were convicted of manslaughter as a result of Blair's death.
Lee Ann Self, a lieutenant in the Birmingham Police Department's Internal Affairs Division, investigated the events at the bar that led to Blair's death. Lt. Self testified that from her investigation she concluded that Vining had violated rules and regulations of the department, that he had neglected his duties, that he had failed to take appropriate action, that he could have intervened, that had he done so "things might have turned out differently," and that a reasonable police officer should have tried to stop the hostilities leading to Blair's death. Vining was fired as the result of charges brought against him for his conduct on the occasion of Blair's death.
Sometimes the Justices of this Court may not understand a particular jury's award (BMW of North America, Inc. v. Gore, [Ms. 1920324, October 29, 1993], 1993 WL 462033 (Ala.1993), or its failure to award punitive damages, Yates v. BMW of North America, Inc., [Ms. 2910714, April 2, 1993], 1993 WL 93670 (Ala.Civ.App.1993), writ quashed, [Ms. 1921062, October 29, 1993], 1993 WL 462068 (Ala.1993). Sometimes the Justices of this Court may not understand why a jury awarded the amount of punitive damages that it did award. Northwestern Mutual Life Insurance Co. v. Sheridan, 630 So.2d 384 (Ala. 1993). With punishment and deterrence as the purpose for punitive damages, we have no difficulty in understanding why this jury awarded punitive damages in the amount of $1.6 million against Vining and the City. Vining does not appeal, and the City does not contend that the award was excessive. Before the trial Benson had entered a pro tanto settlement with Weidler and Brooks for $400,000, and the jury was properly informed of that settlement. Tatum v. Schering Corp., 523 So.2d 1042 (Ala.1988).
The City raises these issues:
I. Whether the City is entitled to the defense of substantive immunity;
II. Whether Vining was an employee of the City for purposes of statutory municipal liability; and
III. Whether the criminal assault by Weidler and Brooks was an intervening and superseding cause of Blair's death.

I.
The City asks this Court "to uphold the settled law of Alabama that police officers and municipalities employing them may not be held liable for failing to prevent private acts of violence." (Appellant's brief, p. 9.) The City insists that substantive immunity (Rich v. City of Mobile, 410 So.2d 385, 387-88 (Ala.1992)) prevents police officers and the municipalities employing them from being held liable for failing to prevent private acts of violence. The action or inaction of Vining in this case is beyond any sanctuary that the umbrella of substantive immunity has ever provided in this state.
In Rich v. City of Mobile, this Court created the defense of substantive immunity:
"A municipality, in contrast to the State, which has immunity under Ala. Const. 1901, § 14, is generally chargeable with the negligence of its employees acting within the line and scope of their employment. In Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), we interpreted § 11-47-190, Code 1975, as so mandating. We believe these public policy considerations, however, override the general rule and prevent the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the well-being of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.

"We readily acknowledge both the difficulty and the risk of error of any attempt to articulate the rule with that degree of definiteness which is easily applicable to varying factual situations. But this phenomenon is no stranger to the Rule of Law generally. We believe the wiser course is to allow the rule to evolve through the judicial process of trial and review on a case by case basis.
"We emphasize, however, that only the narrowest of constructions of our instant holding will avoid violence to § 11-47-190 *905 and its Jackson interpretation; and that the substantive immunity rule of this case must be given operative effect only in the context of those public service activities of governmental entities (not to be confused with the pre-Jackson distinction between governmental and proprietary functions) so laden with the public interest as to outweigh the incidental duty to individual citizens. Cf. DeStafney v. University of Alabama, 409 So.2d 1347 (Ala.1982)...."
410 So.2d at 387-88. (Emphasis added.)
In Calogrides v. City of Mobile, 475 So.2d 560 (Ala.1985), and Garrett v. City of Mobile, 481 So.2d 376 (Ala.1985), this Court found substantive immunity in a police context. Calogrides and Garrett arose out of the same event (a fireworks display at Ladd Stadium during which time a gang of youths attacked individuals in the large crowd). The thrust of the plaintiffs' claims was that Mobile was negligent in deciding to deploy only 82 police officers to Ladd Stadium for the fireworks display. This Court held that liability could not be predicated on that basis, because there was only a finite number of officers on Mobile's police force, so no individual could expect complete protection. Garrett, 481 So.2d at 377. This Court has upheld the liability of a city for the negligence of a police officer who was on the scene, where the only question was whether the officer had acted reasonably under the circumstances. Luker v. City of Brantley, 520 So.2d 517 (Ala.1987); Tyler v. City of Enterprise, 577 So.2d 876 (Ala.1991); Seals v. City of Columbia, 575 So.2d 1061 (Ala.1991). There is no way, under the facts in this case, that the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide public services. Policy considerations supporting immunity do not come into play when a policeman is, in fact, on the scene and in a position to control an aggressor. The question then becomes one of whether the officer acted reasonably or acted negligently. The majority holding in Thetford v. City of Clanton, 605 So.2d 835 (Ala. 1992), is not based upon the doctrine of substantive immunity but on proximate cause and, therefore, is not applicable.
We have considered the New Jersey and New York cases cited by the City, but they do not persuade us that we should broaden our umbrella of substantive immunity. The New Jersey cases appear to have been decided upon the basis of a very specific New Jersey statute; Alabama has no similar statute. (Pico v. State, 116 N.J. 55, 560 A.2d 1193 (1989); Henschke v. Borough of Clayton, 251 N.J.Super. 393, 598 A.2d 526 (1991); Lee v. Doe, 232 N.J.Super. 569, 557 A.2d 1045 (1989); Wuethrich v. Delia, 155 N.J.Super. 324, 382 A.2d 929 (1978); Brown v. Grabowski, 922 F.2d 1097 (3d Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991).) The facts in the case at issue fit the exception set out in the New York cases cited by the City (Motyka v. City of Amsterdam, 15 N.Y.2d 134, 256 N.Y.S.2d 595, 204 N.E.2d 635 (1965), and Riss v. City of New York, 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860 (1968)). The cases applying the exceptions to the Riss rule, which are more like the case before this Court, are Sorichetti v. City of New York, 65 N.Y.2d 461, 492 N.Y.S.2d 591, 482 N.E.2d 70 (1985); Julmis v. City of New York, 194 A.D.2d 522, 598 N.Y.S.2d 312 (1993); and Delong v. Erie County, 60 N.Y.2d 296, 469 N.Y.S.2d 611, 457 N.E.2d 717 (1983).

II.
The City also maintains that Vining was not acting as its agent and, therefore, that it could not be held liable for his actions or his inaction. Ala.Code 1975, § 11-47-190, provides:
"No city ... shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty...."
Thus, the issue becomes whether, under the facts of this case, Vining, an off-duty police officer employed by the bar as a security guard, was acting within the line and scope of his duty with the City for purposes of imposing liability under the doctrine of respondeat superior. It is well settled that *906 the ultimate test of agency is the right of control, whether exercised or notthat is, the test here would be whether Vining was subject to the control of the City. Such a determination is for the trier of fact if the evidence is in dispute. See John R. Cowley & Bros., Inc. v. Brown, 569 So.2d 375 (Ala. 1990).
Suffice it to say that the City's "control" over Vining is evidenced by the inter-office communication from the City's then chief of police setting forth the police department's rules and regulations governing the "Conduct and Responsibility of Police Officers Working Police Related Off Duty Jobs." Pursuant to these rules and regulations, any police officer who wanted to work police-related off-duty jobs was required to submit a request for extra work to the officer's commanding officer for approval, specifying the location of the extra job, the hours, the employer, the duties involved, whether the job was a one-time event or would be continuous, and whether the job was to be worked in uniform. The rules and regulations specifically stated that "any outside police activity will be considered to be regular police work insofar as conduct, performance of duty and compliance with the Rules and Regulations are concerned" and "will be under the direction of the superior officer on duty in the district where the police work is being performed." Furthermore, the rules and regulations state that at least once during the shift of the precinct supervisor, the supervisor shall inspect the police officer working extra duty jobs in uniform to ensure compliance with the rules and regulations.
The evidence shows that Vining had complied with these rules and regulationshe filed the request form, obtained approval to work at the bar, and called the local precinct in the area upon his arrival at the bar.
In addition, according to the testimony of Lt. Self (the person called in to investigate Vining's conduct), Vining's work at the bar was police-related; and, Lt. Self concluded, whether Vining was off-duty or not, he had violated the rules and regulations of the department and had neglected his duties by failing to take appropriate action at the time of the incident. There was substantial evidence that at the time of the incident, Vining was an agent of the City and was acting in the line and scope of his duty.

III.
Finally, the City contends that the criminal assault on Blair by Weidler and Brooks was the sole proximate cause of Blair's death. The City insists that the assault on Blair was an unforeseeable intervening criminal act for which it cannot be held liable. Benson argues that the evidence was sufficient to show that the assault on Blair was foreseeable from Vining's perspective. In Thetford v. City of Clanton, supra, this Court stated:
"We have held that in order to recover against a defendant for harm caused by the criminal actions of a third party, the plaintiff must establish that the defendant `knew or had reason to know of a probability of conduct by third persons that would endanger the plaintiff.' Nail v. Jefferson County Truck Growers Association, Inc., 542 So.2d 1208, 1211 (Ala.1988). Also, a subsequent cause of the plaintiff's injuries is not an `intervening cause,' unless it was unforeseeable.
"`"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such tort or crime, unless the actor at the time of his negligent conduct should have realized the likelihood that such a situation might be created thereby and that a third person might avail himself of the opportunity to commit such a tort or crime."'

"Liberty National Life Insurance Co. v. Weldon, 267 Ala. 171, 188, 100 So.2d 696, 710 (1957) (quoting Restatement (Second) of Torts § 448 ...); see, also, Michael L. Roberts & Gregory S. Cusimano, Alabama Tort Law Handbook § 1.2, at 19 (1990). Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred. The requirement *907 of foreseeability is imposed to preclude a finding of liability when the defendant's conduct was part of the causal chain of events leading to the injury but the resulting injury could not have been reasonably anticipated by the defendant. Foreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence could have been anticipated."
605 So.2d at 840.
The evidence, as previously discussed, was more than sufficient to support a finding by the jury that Vining could have, and should have, foreseen the assault that ultimately resulted in Blair's death. That assault occurred immediately after Vining had told Weidler, a known aggressor, that Vining would not intervene in any altercation between Weidler and Blair that occurred outside the bar. Foreseeability was an issue for the jury to resolve. Thetford v. City of Clanton.
AFFIRMED.
HORNSBY, C.J., and MADDOX, STEAGALL and INGRAM, JJ., concur.
COOK, J., concurs in the result.
ALMON, J., dissents.
ALMON, Justice (dissenting).
I respectfully dissent from the affirmance of this judgment. I do not think that Vining was acting as an agent of the City of Birmingham at the time of the event in question. He was serving as an employee of Gene's Jukebox; his duty was to prevent fights on the premises of his employer. The fact that the City of Birmingham imposes some rules on its officers regarding their off-duty work does not make them its agents when they undertake such work on their own time.
Moreover, I stand by my special concurrence in Thetford v. City of Clanton, 605 So.2d 835, 842-44 (Ala.1992), in which I expressed the opinion that the doctrine of substantive immunity applies to a claim against a municipality alleging failure to provide police protection. If that doctrine applies to the actions of on-duty police officers, it also should apply to the actions of officers when they are off duty. I do not think a city should be held liable for the failure of an off-duty officer to prevent a crime.