775 A.2d 108 (2001)
Roger MACALUSO, individually and as Administrator Ad Prosequendum of The Estate of Joseph MACALUSO and Laurie Macaluso, Plaintiffs-Appellants,
v.
Wade KNOWLES; First Fidelity Group, Inc.; West Orange Board of Education; Martha M. Paravati; Helen M. Williams; Martha Belfiore; Valerie Korczukowski; Randy Rose; and Analiza Maigue, Defendants, and
Township of West Orange and West Orange Police Department, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 2001.
Decided June 5, 2001.
Jason R. Mischel for appellants, (Laurence E. Appet and Associates, attorneys; Mr. Mischel, on the brief).
Matthew J. Scola, West Orange, for respondents.
Before Judges A.A. RODRÍGUEZ, COLLESTER and FALL.[1]
*109 The opinion of the court was delivered by A.A. RODRÍGUEZ, J.A.D.
The issue presented in this appeal is whether there is a "special relationship exception" to the New Jersey Tort Claims Act (TCA) N.J.S.A. 59:1-1 to 13-8. We hold that there is no such exception.
On April 17, 1997, Joseph Macaluso, then a seven year old first grade student at the Redwood Elementary School in West Orange, lost his life. That day, Joseph and the other Redwood Elementary students were released early because school was only in session for a half day. He was struck and killed by a vehicle, driven by Wade Knowles and owned by First Fidelity Group, Inc., when he emerged into the street from between cars illegally parked in front of the school. He was presumably running to meet his mother on the other side of the street.
Joseph's parents (plaintiffs)[2] brought a wrongful death action against: Knowles, First Fidelity, the West Orange Board of Education, the Township of West Orange, the West Orange Police Department, and numerous other defendants who were owners and/or operators of vehicles unlawfully parked in front of the Redwood school on that day. The Township of West Orange and the West Orange Police Department (collectively "Township") moved for summary judgment. Plaintiffs opposed the motion.
The following facts were presented to the motion court as uncontested, material facts. Motor vehicle parking is prohibited in front of the Redwood school on school days between the hours of 9:00 A.M. and 4:00 P.M. Signs are posted to inform the public of this prohibition. When school was dismissed on April 17, 1997, several parents of the students had illegally parked their motor vehicles in front of the school.
Knowles told the investigating police officers that he "never seen the boy run out from between the parked cars." He thought the boy was going into a parked car. He did not realize that he had struck Joseph until he looked in his rear view mirror.
Virginia Carlucci, a school crossing guard employed by the Township, was on duty at the corner of Redwood and Woodland Avenues, but did not witness the accident. Several times in the course of her thirteen years as a crossing guard at that location, Carlucci had notified her superiors that parents of students would park illegally in front of the school at dismissal time. However, by the time the police would arrive, the illegally parked vehicles would be gone. At her deposition, Carlucci testified that after police warnings to the parents, the illegal parking would stop only to resume within a few days. George Dixon, the school principal, also reported the illegal parking problem to the police. He stated, too, that by the time the police would arrive, all illegally parked cars were already departed. Dixon described it as "a 10 to 15 minute problem."
At depositions, James Drylie, the West Orange Police Director, testified that he did not recall being informed of a problem with illegally parked motor vehicles in front of the school on the date of the accident. Captain Joseph Castagnino, the Commander of the Traffic Bureau, and Leonard Lepore, the Township Engineer, *110 denied ever receiving or hearing complaints of illegally parked vehicles in front of the school. After the accident at issue, the illegally parked vehicles were issued summonses.
Plaintiffs argued in opposition to summary judgment that a public entity may be liable for injuries resulting from: its failure to enforce the law; its employee's actions or omissions; its failure to provide emergency signals, signs or markings; its creation of or acquiescence to a dangerous condition; and its acting in a palpably unreasonable manner. Judge Stephen Mochary found no palpably unreasonable conduct on the part of the Township, nor the existence of a dangerous condition.
Plaintiffs sought leave to appeal. We granted that application.[3] In this interlocutory appeal, plaintiffs contend that the judge erred in granting summary judgment to the Township because: (1) a "special relationship" existed which deprived the Township of immunity pursuant to N.J.S.A. 59:5-4; (2) by its inaction, the Township conducted itself in a palpably unreasonable manner and created a "dangerous condition," thus making it liable pursuant to N.J.S.A. 59:4-2; (3) the Township is exempt from the immunity provided for its failure to enforce the law under N.J.S.A. 59:2-4; and (4) the Township is exempt from the immunity of N.J.S.A. 59:4-4 and N.J.S.A. 59:4-5. We disagree with these contentions, which are clearly without merit. With one exception, an extended discussion of these issues is unnecessary. R. 2:11-3(e)(1)(E).
Plaintiffs argue that, despite the statutory immunities provided by sections of the New Jersey Tort Claims Act (TCA), i.e., N.J.S.A. 59:2-4, 59:4-4, 59:4-5, and 59:5-4, the Township may still be held liable because a "special relationship" existed, upon which Joseph had a right to rely. This special relationship, plaintiffs contend, would negate any immunity under the TCA. We disagree.
In Blunt v. Klapproth, 309 N.J.Super. 493, 507, 707 A.2d 1021 (App.Div.), certif. denied, 156 N.J. 387, 718 A.2d 1216 (1998), we questioned whether a "special relationship" exception existed in New Jersey case law. We observed that in Lee v. Doe, 232 N.J.Super. 569, 557 A.2d 1045 (App.Div.1989), there was a discussion of California cases that interpreted that state's version of the TCA and established the special relationship exception. Id. at 505, 707 A.2d 1021. In Blunt, we concluded that a special relationship exception was important to California because "`[t]he question of the applicability of a statutory immunity does not even arise [under California law] until it is determined that a defendant otherwise owes a duty of care to the plaintiff and would thus be liable in the absence of such immunity.'" Id. at 506, 707 A.2d 1021 (citing Davidson v. City of Westminster, 32 Cal.3d 197, 202, 185 Cal.Rptr. 252, 649 P.2d 894 (1982)). "Thus, in California, once the court concludes that there is no special relationship establishing a duty of care, the issue of statutory immunity need not be reached." Ibid.
However, in New Jersey, "[d]uty is not a consideration and the initial determination is whether an immunity applies and, if not, then whether liability should attach." Id. at 506-07, 707 A.2d 1021. Ultimately, we concluded that the discussion in Lee about California's special relationship exception was dicta and not a holding that such exception should be considered by the New Jersey courts when applying the TCA. Id. at 507, 707 A.2d 1021. It is noteworthy that in Lee we upheld the public entity's immunity. Lee, supra, 232 *111 N.J.Super. at 581, 557 A.2d 1045. The assertion to the contrary in Campbell v. Campbell, 294 N.J.Super. 18, 25, 682 A.2d 272 (Law Div.1996), is clearly erroneous and should be disregarded.
We held in Blunt that the TCA was intended to be construed strictly to effectuate its purpose of limiting the liability of the taxpayer and for this reason, courts should be wary of extending public entity liability. Blunt, supra, 309 N.J.Super. at 507, 707 A.2d 1021. "Immunity is the dominant consideration of the Act." Ibid., (citing Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 408, 541 A.2d 1029 (1988)). The Legislature had "rejected the concept of a statute that imposed liability with specific exceptions.... [Instead], `public entities are immune from liability unless they are declared to be liable by enactment.'" Rochinsky, supra, 110 N.J. at 408, 541 A.2d 1029 (quoting The Report of the Attorney General's Task Force on Sovereign Immunity, cmt. to N.J.S.A. 59:2-1 (N.J.1972)). "Thus, when both liability and immunity appear to exist, immunity prevails." Blunt, supra, 309 N.J.Super. at 507, 707 A.2d 1021 (citing Tice v. Cramer, 133 N.J. 347, 356, 627 A.2d 1090 (1993)). As such, we conclude that there is no special relationship exception to the TCA.
Accordingly, Judge Mochary's grant of summary judgment to the Township is affirmed.
NOTES
[1] Judge Fall did not participate in oral argument. The parties have consented to his participation in the decision.
[2] Joseph's father, Roger Macaluso, sued individually and as Administrator ad Prosequendum and Administrator of Joseph's estate. Joseph's mother, Laurie, sued individually.
[3] Roger Macaluso v. Wade Knowles, et al, No. M6547-99 (App.Div. Aug. 3, 2000).