# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1774-24

PATRICIA BULLOCK-PIERCE
and CARL PIERCE, SR.,
Administrators Ad Prosequendum
and General Administrators of the
ESTATE OF CHRISTINE PIERCE,

     Plaintiffs-Respondents,

v.

CABRIA DAVIS,

     Defendant-Appellant,

and

CAMDEN COUNTY,
CAMDEN COUNTY POLICE
DEPARTMENT, and KACHEIM
DAVIS,

     Defendants.

_____

Argued September 25, 2025 – Decided October 2, 2025

Before Judges Mawla and Puglisi.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0238-23.

William F. Cook argued the cause for appellant (Brown & Connery, LLP, attorneys; William F. Cook, on the briefs).

Anthony Granato argued the cause for respondents (Jarve Granato Starr, LLC, attorneys; Anthony Granato, on the brief).

PER CURIAM

Defendant Sergeant[1] Cabria Davis, appeals from a January 17, 2025 Law Division order denying her motion for summary judgment on claims brought by plaintiffs Patricia Bullock-Pierce and Carl Pierce, Sr., Administrators Ad Prosequendum and General Administrators of the Estate of Christine Pierce. We reverse for the reasons expressed in this opinion.

On January 30, 2021, in the mid-afternoon, Sergeant Davis was on patrol when she observed Christine Pierce standing outside of a home on Haddon Avenue in Camden. The sergeant stopped her vehicle and approached Pierce. Two more officers arrived at the scene about three minutes later.

---

[1] Since the incident, the sergeant has been promoted to lieutenant. For purposes of this opinion, we refer to her by the rank she held at the time of the incident to avoid confusion. We intend no disrespect.

The sergeant's body-worn camera captured her encounter with Pierce, who was upset, crying, and yelling, as she banged on the front door of her house. Pierce was wearing only a bathrobe and slippers, and the weather was freezing cold. She told Sergeant Davis that after a verbal altercation with her boyfriend, he pushed her in her chest "out [of] the house," onto the floor of the front porch, and locked her outside. Pierce said her father had a spare key to the home, so Sergeant Davis called the father, but no one answered.

Sergeant Davis and Pierce knocked on the front door to the residence several times before the boyfriend answered the door. The sergeant asked the boyfriend to step outside to talk and provide identification, however, he remained in the doorway.

Approximately a minute later, Pierce's father called back, so Sergeant Davis stepped away and explained the situation to him. Pierce's father advised the sergeant this "always happens."

The boyfriend asked if he was being arrested as he continued to stand in the doorway. Sergeant Davis assured him that he was not being arrested. He then said he would go to his mother's house and proceeded to retreat further into the home. Sergeant Davis requested that he come outside, told him he would not be arrested, and then he finally stepped out onto the front porch.

A-1774-24

Sergeant Davis and Pierce then entered the house to speak, while other officers spoke with the boyfriend outside. The sergeant asked Pierce if she wanted to file any charges. Pierce declined. She then asked if Pierce was injured or had any pain, and Pierce said no.

Sergeant Davis advised Pierce of her rights under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. She also advised her the incident would be documented. Pierce then said Sergeant Davis could "just leave." Sergeant Davis asked Pierce again if she would like to seek a restraining order or press criminal charges, but Pierce declined. The sergeant requested Pierce's personal information and told her she would provide her with a case number.

After speaking with Pierce, Sergeant Davis joined the other two officers and the boyfriend outside the residence. The sergeant and the other officers repeatedly requested the boyfriend's name. Pierce eventually provided it after the boyfriend refused to cooperate.

The boyfriend and Pierce re-entered the alcove of the home. The sergeant told the other officers that she would wait in her patrol car for a few minutes to see that the boyfriend did not "push her out the door again." While in her patrol car, Sergeant Davis conducted a computer search. She then drove down the

road, pulled over, and continued her search. According to her body-worn camera, the entire interaction lasted approximately thirty-three minutes.

Sergeant Davis continued her research and directed the other two officers to contact Camden County Police Department's (CCPD) Realtime Tactical Operation Intelligence Center to determine whether there were any prior calls or other information involving Pierce and her boyfriend. She also reviewed CCPD's domestic violence policies on her computer.

Sergeant Davis learned there were approximately four prior calls for service to the residence. However, there were no charges, active warrants for the boyfriend, or restraining orders in place between him and Pierce.

Sergeant Davis returned to speak with Pierce. This encounter was captured on a second body-worn camera video. Before exiting the vehicle, the sergeant reviewed CCPD's domestic violence training module on her computer.

The sergeant then exited the vehicle and asked Pierce whether the boyfriend left. Pierce confirmed he was gone. She asked how many times the police had been involved with the couple, and Pierce replied, "two or three." Sergeant Davis then stated that because of the number of times the police were called, the officers must do their "due diligence" to protect Pierce and explained CCPD policy and procedure may require the police to act. The sergeant said she

wanted to ensure Pierce was given every possible option to seek help, which Pierce responded she had.

Sergeant Davis asked Pierce whether: the boyfriend had ever threatened her; they had children in common; or he abused alcohol or drugs. Pierce replied "no" to each question. The sergeant then asked, "You're just choosing not to cooperate any further?" Pierce replied "nope."

Sergeant Davis reminded Pierce that she had been given a case number and advised her of her right to file criminal charges and seek a restraining order under the PDVA. The sergeant again confirmed Pierce did not wish to proceed in either regard. Pierce again confirmed she was not injured, had no complaints of pain, and did not wish to speak with a detective.

Nonetheless, after Pierce shut the front door, Sergeant Davis told another officer to contact a detective due to the number of times CCPD had previously been called to the residence. A detective would need to determine whether further follow-up was required.

Despite what Pierce said, the officers suspected the boyfriend had not left the residence. However, Sergeant Davis advised they could not enter the residence to search for him because Pierce said she was no longer in danger.

A-1774-24

That evening, CCPD returned to the residence in response to a call about a fire alarm. Camden City Fire Department also responded and tragically found Pierce inside the home, face down on the floor, with a stab wound on her back. Pierce was transported to the hospital and later pronounced dead. The boyfriend was subsequently prosecuted and pled guilty to manslaughter.

The Camden County Prosecutor's Office and the CCPD's Professional Standards Bureau reviewed the police response. The prosecutor's office concluded the CCPD officers' actions were appropriate because Pierce was advised of her rights, she declined to pursue a restraining order or criminal charges, and she did not have any visible signs or complaints of injury. The Professional Standards Bureau concluded there was not "sufficient evidence to prove any allegation of criminal conduct against these officers beyond a reasonable doubt."

Plaintiffs filed a seven-count complaint in the Law Division. Relevant to this appeal, the complaint asserted counts against Sergeant Davis for negligence and violation of Pierce's right to due process under the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2.

Sergeant Davis moved for summary judgment, arguing she had immunity under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 14-4. She

A-1774-24

pointed out Pierce "was adamant that she did not wish to pursue anything." Although Sergeant Davis made multiple inquiries, Pierce "wanted nothing further to do with" the police. The sergeant saw no signs of injury, and because there was no probable cause to arrest, the sergeant had absolute immunity. Further, there was no civil rights violation because no one was taken into custody and "there were no affirmative acts of law enforcement that put [Pierce] in a position that . . . she would not have otherwise been."

Plaintiffs argued there was liability because the facts showed Pierce and the boyfriend had a history of violent interactions, which Pierce's father corroborated. Sergeant Davis did not separate the couple, even though there was evidence the boyfriend had committed simple assault because Pierce was crying, said she had been pushed, and was standing in the cold in her sleepwear. Plaintiffs alleged the PDVA mandated the boyfriend's arrest and the filing of a criminal complaint. Yet when the sergeant returned to her car, she failed to search the parties' history or administer an assault assessment form on either Pierce or the boyfriend. Plaintiffs claimed the Legislature could not have mandated arrest under the PDVA and, at the same time, granted police immunity for not upholding the PDVA.

A-1774-24

Plaintiffs asserted the civil rights violations were apparent because police established a special relationship through their interactions with Pierce, but did not protect her, thereby creating a danger. Given the disputes in fact on these issues, the judge could not grant summary judgment.

Relying on Campbell v. Campbell, 294 N.J. Super. 18 (Law Div. 1996), the motion judge concluded there was a conflict between the TCA's immunity provisions and the PDVA's requirement that police "shall arrest" a perpetrator of domestic violence. Whether there was negligence was a material issue of fact that only a jury could decide. The judge denied summary judgment on the negligence and civil rights claims for failure to protect for the same reasons. We subsequently granted Sergeant Davis leave to appeal.

I.

A summary judgment ruling is reviewed de novo, applying the same legal standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). We "review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); R. 4:46-2(c). If "only a legal issue is involved in the absence

of a genuine factual dispute, that standard is de novo, and the trial court rulings 'are not entitled to any special deference.'" Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

II.

A.

Sergeant Davis contends the TCA provides absolute immunity for an officer who fails to arrest notwithstanding the PDVA. She points to S.P. v. Newark Police Department, 428 N.J. Super. 210, 233 (App. Div. 2012), a case she cited to the motion judge, in support of the proposition that an officer who fails to arrest a domestic violence perpetrator who later harms their victim is entitled to immunity pursuant to N.J.S.A. 59:5-5. This statutory provision clearly states: "Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody." N.J.S.A. 59:5-5.

The sergeant argues S.P. also held domestic violence cases do not create a special relationship exception under the TCA and no such exception exists. 428 N.J. Super. at 233-34. The special relationship exception was created by Campbell, a non-binding Law Division case that has been rejected by us in

10

several instances. See S.P., 428 N.J. Super. at 233; Macaluso ex rel. Macaluso v. Knowles, 341 N.J. Super. 112, 116 (App. Div. 2001); see generally Blunt v. Klapproth, 309 N.J. Super. 493, 507 (App. Div. 1998) (questioning the "applicability of the special relationship doctrine to case law" in New Jersey).

The sergeant asserts the motion judge also did not consider the other TCA immunities. He did not address N.J.S.A. 59:5-4, which states: "Neither a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service." The judge did not consider N.J.S.A. 59:2-4, which provides that "[a] public entity is not liable for any injury caused by adopting or failing to adopt a law or by failing to enforce any law," and N.J.S.A. 59:3-5, which states "[a] public employee is not liable for an injury caused by his adoption of or failure to adopt any law or by his failure to enforce any law." Further, N.J.S.A. 59:3-3, which grants a public employee immunity "if [they] act[] in good faith in the execution or enforcement of any law" applies here as well because there are no facts indicating the sergeant failed to act in good faith.

B.

N.J.S.A. 2C:25-21 states:

> a. When a person claims to be a victim of domestic violence, and where a law enforcement officer

responding to the incident finds probable cause to believe that domestic violence has occurred, the law enforcement officer shall arrest the person who is alleged to be the person who subjected the victim to domestic violence and shall sign a criminal complaint if:

> (1) The victim exhibits signs of injury caused by an act of domestic violence;
>
> (2) A warrant is in effect;
>
> (3) There is probable cause to believe that the person has violated N.J.S.[A.] 2C:29-9, and there is probable cause to believe that the person has been served with the order alleged to have been violated. If the victim does not have a copy of a purported order, the officer may verify the existence of an order with the appropriate law enforcement agency; or
>
> (4) There is probable cause to believe that a weapon as defined in N.J.S.[A.] 2C:39-1 has been involved in the commission of an act of domestic violence.

Notwithstanding this provision, we have stated the N.J.S.A. 2C:25-21's mandatory arrest provision does not trump the governmental immunity provided by N.J.S.A. 59:5-5 under the TCA. Turner v. Twp. of Irvington, 430 N.J. Super. 274, 286 (App. Div. 2013) (citing S.P., 428 N.J. Super. at 230, 232-33). Indeed, we have unequivocally found "[t]he legislative policies of the TCA and [P]DVA are compatible." S.P., 428 N.J. Super. at 230.

A-1774-24

In S.P., we held

> "[w]hen a person claims to be a victim of domestic violence," and the responding law enforcement officer "finds probable cause to believe that domestic violence has occurred," the officer is required to arrest the alleged perpetrator and sign a criminal complaint if the victim "exhibits signs of injury caused by an act of domestic violence[.]"
>
> [428 N.J. Super. at 223 (quoting N.J.S.A. 2C:25–21(a)) (alterations in original).]

However, "the TCA immunizes public employees for injury that results from 'the exercise of judgment or discretion vested in [them.]'" Id. at 230 (citing N.J.S.A. 59:3-2(a), N.J.S.A. 59:2-3(a)).

The process of deciding whether a "person is a 'victim of domestic violence' [or whether] there is probable cause to believe that 'domestic violence,' has occurred," is discretionary because it requires responding officers to conduct "significant thoughtful analysis" and deliberate on "a variety of factors." Id. at 231. Where a discretionary decision is required, a public employee is liable "only for 'palpably unreasonable conduct.'" Gonzalez by Gonzalez v. City of Jersey City, 247 N.J. 551, 571 (2021) (quoting Henebema v. S. Jersey Transp. Auth., 219 N.J. 481, 495 (2014)). In S.P., we were unconvinced "the Legislature intended to make officers [who respond to domestic violence calls] civilly liable for the victim's subsequent injury if, within their judgment, she was not entitled

to the protections of the PDVA." 428 N.J. Super. at 233. Thus, we concluded the officers in S.P. were entitled to absolute immunity. Ibid.

The facts here demonstrate Sergeant Davis's determination that the PDVA did not mandate the arrest of the boyfriend was a proper exercise of discretion that is entitled to absolute immunity under N.J.S.A. 59:3-2(a), N.J.S.A. 59:2-3(a), and N.J.S.A. 59:5-5. The sergeant did not just base her decision on what Pierce told her, but on an objective assessment of whether Pierce had been injured and, independent of injury, whether there was some other basis to arrest under every subsection of N.J.S.A. 2C:25-21(a). There simply was none.

In addition, as Sergeant Davis correctly points out, the law is well-established that there is no "special relationship" exception to the TCA created under the PDVA. See Macaluso, 341 N.J. Super. at 116; Blunt, 309 N.J. Super. at 507-08; S.P., 428 N.J. Super. at 233-34. Campbell does not control, nor is it good law. Macaluso, 341 N.J. Super. at 116. For these reasons, based on our de novo review, we hold the sergeant had absolute immunity.

III.

A.

Sergeant Davis contends the failure to arrest a domestic violence abuser is not a due process violation. Citing DeShaney v. Winnebago County

A-1774-24

Department of Social Services, she asserts due process does not impose an affirmative duty on the government to protect its citizens. She reiterates the special relationship and state-created danger exceptions to DeShaney are not present because here, no one was taken into custody and the failure to arrest does not constitute affirmative action. 489 U.S. 189 (1989). Pursuant to Town of Castle Rock v. Gonzales, she argues there are neither substantive nor procedural due process protections for "the benefit that a third party may receive from having someone else arrested for a crime." 545 U.S. 748, 768 (2005). Notwithstanding DeShaney and its exceptions, the sergeant asserts she is entitled to qualified immunity on the due process claims because the record does not clearly establish her failure to arrest the boyfriend would be unconstitutional if this action were taken by a similarly situated officer.

## B.

The NJCRA was enacted as a state analog to 42 U.S.C. § 1983, Perez v. Zagami, LLC, 218 N.J. 202, 212 (2014), and as such, "the interpretation given to parallel provisions of [§] 1983 may provide guidance in construing our Civil Rights Act." Tumpson v. Farina, 218 N.J. 450, 474 (2014). "Given their similarity, our courts apply § 1983 immunity doctrines to claims arising under the [NJCRA]." Brown v. State, 442 N.J. Super. 406, 425 (App. Div. 2015), rev'd

on other grounds, 230 N.J. 84 (2017); see also Gormley v. Wood-El, 218 N.J. 72, 113-16 (2014) (discussing the qualified immunity doctrine).

DeShaney held "the Due Process Clause does not 'requir[e] the State to protect the life, liberty, and property of its citizens against invasion by private actors.'" Town of Castle Rock, 545 U.S. at 755 (alteration in original) (quoting DeShaney, 489 U.S. at 195). Therefore, for Pierce's claim to be actionable, an exception must apply.

The special relationship exception exists when "the State takes a person into its custody and holds [them] there against [their] will." DeShaney, 489 U.S. at 199-200. The facts readily establish that did not happen here.

The state-created danger exception to DeShaney requires plaintiffs to show "the state's own actions create[d] the very danger that causes the plaintiff's injury." Morrow v. Balaski, 719 F.3d 160, 167 (3d Cir. 2013). "Affirmative conduct on the part of the [d]efendant[ is required] to support the . . . exception . . . ." Ibid. Our de novo review of the record does not convince us Sergeant Davis either failed to meet the proper policing standards under the PDVA or that her conduct created the very danger that caused Pierce's death.

In Castle Rock, the Court held "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger

16

A-1774-24

protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." 545 U.S. at 768 ("[R]espondent did not, for purposes of the Due Process Clause, have a property interest in police enforcement of the restraining order against her husband."). For these reasons, the failure to arrest the boyfriend here did not trigger due process protections.

Finally, qualified immunity is a doctrine which shields government officials from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Immunity from suit is the right to avoid the rigors and costs of trial. Gormley, 218 N.J. at 113.

Procedurally, "[w]hether an official is covered by qualified immunity is a matter of law to be decided by a court, 'preferably on a properly supported motion for summary judgment or dismissal.'" Ibid. (quoting Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000)). Substantively, "[q]ualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Ibid. (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted)).

A-1774-24

The doctrine of qualified immunity "shield[s] 'government officials performing discretionary functions generally . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Morillo v. Torres, 222 N.J. 104, 116 (2015) (quoting Harlow, 457 U.S. at 818). Gormley observed that "[f]or a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [they are] doing violates that right.'" 218 N.J. at 113 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (second alteration in original).

The motion judge did not address the qualified immunity issue. Regardless, as we have recounted, our de novo review of the record reveals no evidence that Sergeant Davis irresponsibly exercised her authority or violated any clearly established right. As a result, she was entitled to qualified immunity, and summary judgment should have been granted in her favor on the due process claim.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division