935 A.2d 769 (2007)
396 N.J. Super. 486
Shana Faith MASSACHI, as Administratrix and Administratrix ad Prosequendum of the Estate of Sohayla Massachi and Andy Fuller, Administrator of the Estate of Pamala Joy Fuller, Plaintiffs-Appellants
v.
AHL SERVICES, INC., USA Security Services, Inc., Argenbright Security, Inc., Darrell Williams, Lloyd Pearson, and Seton Hall University, Defendants, and
City of Newark Police Department, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 2007.
Decided November 15, 2007.
*771 Brian J. Levine, argued the cause for appellants (Brenner & Levine, P.A., attorneys, Somerville; Mr. Levine, on the brief).
Terry Ridley, Newark, argued the cause for respondent City of Newark (Hunt, Hamlin & Ridley, attorneys; Raymond L. Hamlin, on the brief).
Before Judges WEISSBARD, GILROY and BAXTER.
The opinion of the court was delivered by
BAXTER, J.A.D.
This appeal arises from the murder of a Seton Hall University student by her former boyfriend after she was abducted outside the University gates. The suit filed after her death alleged that a series of missteps by the 9-1-1 operator and police dispatcher who had received the call from eyewitnesses caused police to search for the wrong car and respond to the wrong location, thereby missing any opportunity they would have had to save the young woman's life. The trial court granted the City of Newark's (City) motion for summary judgment, finding that the City was immune from liability under N.J.S.A. 59:5-4, a section of the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 (Act or TCA). N.J.S.A. 59:5-4 provides immunity for the failure of a public entity and its employees to provide police protection service or sufficient police protection service. We conclude that the immunity provided by that section does not immunize 9-1-1 operators and police dispatchers from the results of their negligently executed ministerial duties, and accordingly reverse the grant of summary judgment to the City. We do not address the City's alternate immunity claim under N.J.S.A. 52:17C-10(d), and permit the parties upon remand to more fully develop their arguments respecting that statute.

I.
On the afternoon of May 10, 2000, two high school girls saw Christopher Honrath pull Sohayla Massachi into a black, two-door sports car on South Orange Avenue in front of Seton Hall University in South Orange. Massachi was crying and screaming for help. At approximately 2:30 p.m., one of the girls ran to the security guard's booth at the University's main gate and reported what she had seen to one of defendant Argenbright Security's employees. She also provided him with the license plate number of the vehicle. When a security guard told her "it was not on campus and there was nothing they could *772 do for her," she ran back to the car. She saw Massachi still crying out for help. The two girls screamed at the man to let Massachi go, but he pushed Massachi into the car and sped away. At 2:48 p.m., the girls telephoned the South Orange Police Department from one of their homes and reported the abduction. They provided a description of the people involved, and a description of the car and its license plate number.
At approximately the same time, at 2:42 p.m., two off-duty Essex County Sheriff's Officers, Melissa Lester and Elwood Thompson, were driving on South Orange Avenue as Honrath pulled Massachi into the car and drove away. Lester immediately called 9-1-1 and reported to the 9-1-1 operator, Debony Venable, that Massachi was struggling, screaming and beating on the windows. Venable was an employee of the City's police department. Lester calmly and accurately provided a complete description of the fleeing vehicle and its direction of travel. In particular, Lester told Venable the vehicle was a black Plymouth Laser. Venable commented to Lester, "what are [police] going to do, by the time they come out this car will be gone." Venable had questions about how to handle the call, but rather than consult a supervisor, as required by official police department guidelines, she consulted a co-worker.
Venable entered the information Lester had provided into the 9-1-1 computer system. Venable made two critical errors. First, she entered an incorrect description of the vehicle, calling it a Chevrolet "Blazer," which is a sport utility vehicle, rather than a Plymouth "Laser," which is a sports car. Second, Venable did not report the last known location of the vehicle or that it was in motion; instead, she merely reported the location of the initial abduction at South Orange and Stuyvesant Avenues. The dispatcher, George Mike, relied on the incorrect information Venable had entered into the 9-1-1 computer system, and accordingly he dispatched a police unit to South Orange and Stuyvesant Avenue, the original location of the abduction. Because Venable failed to specify in the 9-1-1 system that the car was moving, by the time police arrived at South Orange and Stuyvesant Avenues, Honrath and Massachi were long gone. Mike did not issue a general police alert on the vehicle, although applicable police procedures required him to have done so.
At 3:00 p.m., Westfield police were notified by Gary Powell, who shared the house on Central Avenue in Westfield with Honrath, that Honrath had pulled a woman by her hair into his room and that she was screaming that Honrath had a gun. Three Westfield police officers responded. Two of them immediately went upstairs, knocked on Honrath's door and yelled "police." They heard two gunshots. Rather than immediately enter the room, the officers waited one hour for a Union County Emergency Response Team to arrive. When the Response Team entered Honrath's room, they found him dead and Massachi unconscious from a bullet wound to the head. She was transported to a hospital in Newark where she died two days later from the gunshot wound.
Less than a month after Massachi was abducted, the City's police department instituted disciplinary charges against Venable. The Department found that she neglected her official duties by violating official police department policies and procedures in the handling of the 9-1-1 call that day. Specifically, the police department charged her with failing to: (1) advise the dispatcher that the suspect's vehicle was moving and not stationary; (2) inform her supervisor of the 9-1-1 call; (3) obtain the names, addresses and *773 phone numbers of the people who called in the complaint; (4) enter the correct description of the vehicle into the computer aided dispatcher (CAD) system; (5) record the vehicle's path of travel in the CAD, which resulted in a unit being dispatched to the wrong location; and (6) keep the caller, Lester, on the telephone so that Lester would be able update the responding units on the direction that Honrath's vehicle was proceeding. Expert reports submitted by plaintiffs in opposition to the City's summary judgment motion opined that had Venable correctly entered the information she received from Lester into the CAD system, Honrath's identity would have been determined, and police would have had time to prevent him from creating a "barricaded gunman/hostage situation."
The trial court granted summary judgment motions filed by the South Orange and Westfield Police Departments. The court denied the motions by Argenbright Security and Seton Hall, but plaintiffs' claims against them were subsequently settled through mediation. Plaintiffs voluntarily dismissed the complaint against the Union County Emergency Response Team. The trial court granted summary judgment to the City on August 26, 2005, finding that Newark was entitled to immunity under N.J.S.A. 59:5-4, but not under N.J.S.A. 52:17C-10(d).
In his decision, the motion judge held that Sczyrek v. County of Essex, 324 N.J.Super. 235, 735 A.2d 33 (App.Div. 1999), certif. denied, 163 N.J. 75, 747 A.2d 284 (2000), was dispositive. The judge found that, under Sczyrek, immunity exists when a plaintiff alleges liability based upon the failure of police to provide, or when police inadequately provide, protection from the criminal acts of third parties. The judge concluded that immunity applies regardless of whether the police acted carelessly or negligently, or whether their conduct was ministerial or not ministerial. The judge determined that the negligent performance of ministerial acts, which results in a failure to provide police protection, is entitled to immunity under N.J.S.A. 59:5-4. He reasoned that the facts in Sczyrek were on "all fours" with this case. After the claims of all other defendants were resolved, the grant of summary judgment to the City became a final judgment, and plaintiff appealed as of right on October 24, 2006.
The City also argued that it was entitled to immunity under N.J.S.A. 52:17C-10(d), which provides in pertinent part, that "no . . . public safety answering point . . . or any employee . . . of any such entity, shall be liable to any person for civil damages . . . resulting from . . . any other aspect of delivering enhanced 9-1-1 service." After the judge explained his reasons for granting summary judgment to the City on the basis of N.J.S.A. 59:5-4, he commented, "having done so, it's not necessary that I . . . [address] the second issue for summary judgment, that is dismissal under N.J.S.A. 52:17C-10." The judge then briefly discussed that 9-1-1 statute. At the conclusion of those comments, the judge observed, "so I don't find that it's clear on its face . . . that [N.J.S.A. 52:17C-10(d)] would be applicable under these circumstances. But, I do find that Cywreck [sic] is controlling and the City of Newark's entitled to summary judgment."

II.
Summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Here, the parties agree that there are no genuine issues of material fact. We *774 must therefore decide whether the trial court correctly interpreted the law. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). The trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference. Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Accordingly, we now decide whether the motion judge correctly determined that N.J.S.A. 59:5-4 immunizes the City from liability for the negligent acts of Venable and Mike. The City argues that the motion judge properly relied upon our decision in Sczyrek, and that the cases relied upon by plaintiff are inapplicable because they do not involve the criminal acts of a third party. We review those arguments against the applicable provisions of the Act.
The Act specifies that except as otherwise provided, a public entity is not liable for any injury "whether such injury arises out of an act or omission of the public entity or a public employee. . . ." N.J.S.A. 59:2-1(a). Thus, the dominant theme of the Act is immunity, with liability as the exception. Rochinsky v. Dep't of Transp., 110 N.J. 399, 408, 541 A.2d 1029 (1988). A public entity is immune from liability unless there is a specific provision in the Act that imposes liability. N.J.S.A. 59:2-1(b); Malloy v. State, 76 N.J. 515, 518-19, 388 A.2d 622 (1978). Consequently, even if a provision of the Act establishes liability, a corresponding provision of the Act may immunize the public entity from liability. Malloy, supra, 76 N.J. at 521, 388 A.2d 622.
The provisions of the Tort Claims Act governing immunity and liability of a public entity generally correspond to the provisions relating to immunity and liability of the public employee. "A public employee is not liable for an injury resulting from the exercise of judgment or discretion vested in him," N.J.S.A. 59:3-2(a), and "[a] public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity." N.J.S.A. 59:2-3(a).
N.J.S.A. 59:3-2 does not "exonerate a public employee for negligence arising out of his acts or omissions in carrying out his ministerial functions." N.J.S.A. 59:3-2(d). A ministerial act is one in which a "person . . . performs under a given state of facts in a prescribed manner . . . without regard to or the exercise of . . . judgment upon the propriety of the act being done." Kemp by Wright v. State, 147 N.J. 294, 308, 687 A.2d 715 (1997). A public entity is liable for injury caused by its employee acting or failing to act within the scope of his employment. N.J.S.A. 59:2-2(a). It is not liable where the public employee is not liable. N.J.S.A. 59:2-2(b).
Chapter five of the Act provides for specific immunities in the area of corrections and police activities. N.J.S.A. 59:5-1 to -6. Two of the statutes in that chapter provide immunity for police conduct and are relevant to this case, N.J.S.A. 59:5-4 and -5. N.J.S.A. 59:5-4 provides:
Neither a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service.
N.J.S.A. 59:5-5 provides:
Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody.
*775 We turn to an analysis of N.J.S.A. 59:5-4, on which the judge relied when he granted the City's motion for summary judgment. We do not write on a clean slate. The statute in question has been construed and interpreted on many occasions by this court.
We have held that police officers are entitled to immunity under N.J.S.A. 59:5-4 when their failure to provide police protection or sufficient police protection results from a discretionary decision: "[d]iscretionary decisions of officers in the field may subject a municipality to claims equal to or in excess of those resulting from the errors in judgment or discretion exercised by high-ranking public employees. Their decisions may materially affect the efficient distribution of a scarce police personnel resource." Morey v. Palmer, 232 N.J.Super. 144, 152, 556 A.2d 811 (App.Div.1989). In instances, however, where police officers negligently perform ministerial duties, we have concluded that "N.J.S.A. 59:5-4 does not insulate police officers from [the] unfortunate results of their negligently executed ministerial duties."[1]Suarez v. Dosky, 171 N.J.Super. 1, 10, 407 A.2d 1237 (App.Div.1979), certif. denied, 82 N.J. 300, 412 A.2d 806 (1980).
In Suarez, two state troopers responded to an accident scene along the side of Interstate Route 80. Id. at 6, 407 A.2d 1237. The troopers found the vehicle disabled and its eight passengers standing on the shoulder of the roadway. Ibid. Although requested to do so, the troopers refused to escort the stranded occupants of the vehicle from Route 80 and refused to radio for a taxicab. Id. at 5, 407 A.2d 1237. Instead, the troopers instructed the adults and two young children to walk 500 feet to the nearest exit. Id. at 5-6, 407 A.2d 1237. As the family was walking along the shoulder of the highway toward the exit, one of the children wandered out into the lane of traffic and was killed by an unknown vehicle. Id. at 6, 407 A.2d 1237. Plaintiff's decedent ran onto the highway in an attempt either to rescue the child or recover her body. Ibid. She, too, was struck and killed. Ibid. The surviving husband sued, claiming that the officers breached their duty to aid citizens in distress. Ibid. The State argued that the officers were immune from liability under N.J.S.A. 59:5-4. Id. at 7, 407 A.2d 1237.
We rejected the State's argument, and held that N.J.S.A. 59:5-4 "ha[d] no application to th[at] case." Id. at 9, 407 A.2d 1237. We reasoned that when the Legislature enacted N.J.S.A. 59:5-4, it sought to protect "the [g]overnment's essential right and power to allocate its resources in accordance with its conception of how the public interest will be best served, an exercise of political power which should be insulated from interference by judge or jury in a tort action." Ibid. We recognized that a municipality would be entitled to immunity under N.J.S.A. 59:5-4 if a police officer failed, for example, to respond to the scene because he was performing some other official duty. Id. at 9-10, 407 A.2d 1237. We concluded that N.J.S.A. 59:5-4 only precludes suits against municipalities and their responsible officers when the injury occurred from the absence of a police force or from the presence of an inadequate one: "[h]ow many officers a town should employ, how each should be equipped and whether a town should have *776 any police at all are political decisions which should not be made the subject of any tort duty." Id. at 9, 407 A.2d 1237. In contrast, we held that if the officer "does respond[,] N.J.S.A. 59:5-4 will not insulate him from the unfortunate results of his negligently executed ministerial duties." Id. at 10, 407 A.2d 1237.
Clearly, our holding in Suarez distinguished between the performance of low-level ministerial tasks such as the one the troopers made there, and higher level policy decisions concerning the number of officers a town should employ and how police officers and equipment should be distributed. The latter fall within the protected area of immune decisions that should be insulated from interference by a judge or jury. Id. at 9, 407 A.2d 1237.
We find the doctrinal underpinnings of Suarez persuasive, and believe its rationale is fully applicable here. Accordingly, the City's "essential right and power to allocate its resources in accordance with its conception of how the public interest will be best served," id. at 9, 407 A.2d 1237, would immunize the City from liability if it had employed an inadequate number of 9-1-1 operators or if it had provided equipment that was inadequate. Applying the logic of Suarez, we conclude that once the City made a decision to hire 9-1-1 operators and provide them with specific procedural regulations governing the manner in which they must respond to calls, then the negligent performance of those 9-1-1 operator duties is not entitled to any immunity under N.J.S.A. 59:5-4.
Here, the motion judge concluded that the reasoning in Suarez was not applicable to the facts before him because Suarez, unlike the instant matter, did not involve the criminal conduct of a third party. For that reason, the motion judge held that Suarez was distinguishable. We believe his approach constitutes an incorrect reading of Suarez. In Suarez, we specifically addressed the public entity's contention that the defendant troopers in its employ were afforded complete immunity from tort liability in the circumstances of that case. In Suarez, the State argued that N.J.S.A. 59:5-4 provides a "full and complete immunity from all tort liability arising out of any acts or omissions of the police in the performance of their official duties." Id. at 7, 407 A.2d 1237. We reasoned, in part, that the "broad and pervasive immunity" that the State argued was inherent in N.J.S.A. 59:5-4 would make the immediately following provision, N.J.S.A. 59:5-5, "entirely superfluous." Id. at 8, 407 A.2d 1237.
The same is true here. N.J.S.A. 59:5-5 provides immunity for the failure of police to "make an arrest" or "retain an arrested person in custody." If, as the motion judge held, N.J.S.A. 59:5-4 provides full immunity to police for the criminal conduct of third parties, then the Legislature would have had no reason to provide a specific immunity in N.J.S.A. 59:5-5 for the failure of police to make an arrest. Thus, we reject the motion judge's conclusion, as we did in Suarez, that N.J.S.A. 59:5-4 immunizes a public entity based upon any and all negligent conduct of police. While Suarez did not address a public entity's potential liability for the criminal conduct of a third party, we rely on its conclusion that N.J.S.A. 59:5-4 cannot be read as broadly as the City does here, or as the State did in Suarez, because to do so would render an entire statutory section superfluous. A construction that will render any part of a statutory enactment superfluous is to be avoided. Monaghan v. Holy Trinity Church, 275 N.J.Super. 594, 603, 646 A.2d 1130 (App.Div.1994).
*777 Additionally, as we have already discussed, we rely on our holding in Suarez that N.J.S.A. 59:5-4 only immunizes an entity for its discretionary police actions that result in a failure to provide police protection. Suarez, supra, 171 N.J.Super. at 9, 407 A.2d 1237. The statute does not protect them from the results of the negligent performance of their ministerial duties. Id. at 10, 407 A.2d 1237.
We reached a similar result in Shore v. Housing Authority of Harrison, 208 N.J.Super. 348, 506 A.2d 16 (App.Div. 1986). There, we faced the question of whether N.J.S.A. 59:5-4 immunizes an entity from liability for negligent acts committed by a Housing Authority security guard during the performance of his assigned duties. Id. at 350, 506 A.2d 16. We held that it did not. Ibid. In Shore, the Housing Authority operated two adjacent public housing projects, both of which were patrolled by a security service provided by two non-police personnel. Ibid. Although the employee in question was not a sworn police officer, but was instead a civilian employee of the Harrison Police Department, the public entity conceded that its relationship with the security guard was that of employer and employee, and the employee was providing a police function. Ibid. Accordingly, both sides agreed, and we concluded, that the provisions of N.J.S.A. 59:5-4 were potentially applicable.
In Shore, the plaintiff was injured while attempting to dodge a firecracker thrown at her by a juvenile on the premises owned by the Housing Authority. Id. at 351, 506 A.2d 16. Plaintiff alleged that the security guard was not at his assigned post at the time of the incident and was not even aware that plaintiff had been injured until after the police arrived. Ibid. The motion judge concluded that the public entity was immune because the employee's negligent performance of his patrol duties was nothing more than the failure of the Authority to provide police protection service. Ibid.
We disagreed with that conclusion, and rejected the judge's reasoning that the condition complained of by plaintiff was analogous to a municipality "having only thirty six police officers instead of forty or having three cars in a neighborhood and only two cars in another neighborhood or something like that." Ibid. We held that "there is a distinction between the failure to provide police protection service, or sufficient police protection service, and the negligent performance by a police officer of his assigned duties. The latter is not immunized by N.J.S.A. 59:5-4." Ibid.
In Shore, we relied on our earlier conclusion in Suarez that the immunity conferred by N.J.S.A. 59:5-4 concerns only the right and power of a public entity to allocate its resources in accordance with its conception of how the public interest will be best served; and the statutory immunity did not apply to the negligent performance of a police officer's duties after having responded to an automobile accident. Id. at 352, 506 A.2d 16. Thus, in Shore, we applied the same analysis to N.J.S.A. 59:5-4 as we had in Suarez. We held that an officer has a duty to maintain his post, and is not free to pursue recreational activities while he is required to be on duty. Id. at 352-53, 506 A.2d 16. We concluded that when the security guard was "goofing off" he was acting negligently in the performance of his ministerial duties, and that N.J.S.A. 59:5-4 did not provide immunity for that conduct. Ibid.
We emphasized in Shore that the plaintiff was not attacking the "discretionary prerogatives" of the Authority in employing only two security officers, or in scheduling the tours of duty so that only one officer would be patrolling both complexes at a particular time. Id. at 353, 506 A.2d *778 16. Because the "gravamen of [plaintiff's] complaint [was] not the failure to furnish a security officer . . . [but was] [r]ather . . . the asserted negligence of the security officer . . . in performing his patrol duties," liability [existed] "for tortious inadequacies in the performance of the employee's tasks." Ibid. We held that imposition of liability for such negligent performance of a ministerial duty did not encroach upon the right and power of the public entity to allocate its resources and, accordingly, no immunity was conferred by N.J.S.A. 59:5-4. Ibid.
So too, here, where plaintiff does not argue that the City was negligent in the number of 9-1-1 operators that it provided or in the type of equipment available to those operators. Instead, plaintiff narrowly argues that once the City sought to provide 9-1-1 protection, the information recorded by a 9-1-1 operator was required to be recorded accurately. In our view, such claim does not encroach upon the allocation of resources here any more than it did in Suarez or Shore. For the reason that we determined in Suarez and Shore that the immunity provisions of N.J.S.A. 59:5-4 were inapplicable, the same result should apply here.
The City also argues that even if we were to disagree with the judge's interpretation of N.J.S.A. 59:5-4, it is nonetheless entitled to immunity because of the lack of proximate cause. The City strenuously argues that even if the 9-1-1 operator had correctly reported the make and model of the car and its direction of travel to the dispatcher, the result would have been the same. We do not weigh the evidence and determine the issue of proximate cause, as such issues are the province of a jury. In the context of a summary judgment motion, plaintiff is entitled to the benefit of the inference that had Venable accurately recorded and reported the information from Lester, Massachi could have been saved. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
With Suarez and Shore as a framework for our analysis, we now consider Sczyrek, supra, 324 N.J.Super. 235, 735 A.2d 33, on which the motion judge relied when he granted summary judgment to the City. The judge noted that in Sczyrek, Essex County was entitled to immunity under N.J.S.A. 59:5-4. In Sczyrek, the brother of a man on trial in the Essex County courthouse fatally shot John Sczyrek, a Newark police officer who was waiting in a hallway to testify against the assailant's brother. Id. at 237, 735 A.2d 33.
When Sczyrek's widow instituted suit against Essex County, she alleged that the security plan the County had adopted for the Essex County courthouse was inadequate and had led to her husband's murder. Id. at 238, 735 A.2d 33. We rejected that claim and held that the decision of the Essex County authorities to adopt a security plan, determine how that plan should operate, and permit employees to bypass the metal detector device "epitomize[d] the policy or political decisions entrusted to governmental officials, with which judges and juries should not interfere." Id. at 242, 735 A.2d 33.
We also affirmed the trial court's determination that N.J.S.A. 59:5-4 provides immunity for the failure of county officials to investigate an inmate's claim that a Newark police officer named "Sczy" was going to be murdered. Id. at 245, 735 A.2d 33. We held that, unlike the county's approval of the courthouse security plan, which involved a "policy determination," no policy decision was involved when county officials ignored the inmate's warning. Ibid. We held, however, that the immunity provisions of N.J.S.A. 59:5-4 "nevertheless apply with equal force" because a discretionary *779 decision not to provide police protection is also entitled to immunity. Ibid. We view that conclusion as consistent with our holding here that the City is not immune.
The motion judge concluded here that in Sczyrek, Essex County was granted immunity only because the plaintiff's claim was based on the criminal conduct of a third party. That conclusion is erroneous. The motion judge's conclusion improperly focused on the end result, rather than on the reasoning that underlies our decision in Sczyrek.
Our finding of immunity in Sczyrek was premised upon the discretionary nature of the governmental actions at issue, not upon the presence of criminal conduct by a third party. In Sczyrek, a markedly different type of governmental action occurred than is presented here. There, the County analyzed various security plans, adopted one and rejected others. Id. at 241, 735 A.2d 33. We held that even if the security plan that the County ultimately chose was inadequate, such decision lies at the heart of the immunity conferred by N.J.S.A. 59:5-4 because the decision, however erroneous it might have been, led to inadequate police protection. Id. at 242, 735 A.2d 33.
Unlike the decision by Essex County not to investigate the inmate's claim in Sczyrek, here the police action consists only of careless handling of a 9-1-1 call. Police had no discretionary latitude here. The requirement to record the data properly was ministerial because the operator had a duty to enter the data "in a prescribed manner . . . without regard to or the exercise of . . . judgment. . . ." Kemp, supra, 147 N.J. at 308, 687 A.2d 715.
Ultimately, we concluded in Sczyrek that unlike Suarez and Shore, the death in Sczyrek did not stem from "police on the scene behav[ing] negligently," but instead, from governmental policy determinations. Sczyrek, supra, 324 N.J.Super. at 242, 735 A.2d 33. Thus, the doctrinal underpinning of Sczyrek lies in its recognition that while governmental policy decisions are entitled to immunity, carelessness and negligence of rank and file employees are not. Ibid. The motion judge here failed to recognize that critical distinction and, accordingly, reached an incorrect result.
Another case that informs our analysis here is Lee v. Doe, 232 N.J.Super. 569, 557 A.2d 1045 (App.Div.1989). Although ultimately we approved the grant of summary judgment to the City of Camden, that determination was based on the provisions of N.J.S.A. 59:5-5, which the City does not rely on here. However, our treatment in Lee of the immunity contained in N.J.S.A. 59:5-4 is instructive.
In Lee, police officers were called to a home in the City of Camden twice as the result of a man's threats to return to the house and kill his nephew and the plaintiff. Id. at 571, 557 A.2d 1045. Each time the police arrived, the man had already gone and after a few minutes police left. Ibid. Police rebuffed plaintiff's request that the officers remain and patrol the area. Ibid. A few minutes after police had left the second time, the man again returned and was able to fire a gun through the doorway before the occupants were able to close the door, severely injuring the plaintiff in the leg. Id. at 571-72, 557 A.2d 1045. Ultimately, we affirmed the motion judge's determination that N.J.S.A. 59:5-5, which affords immunity for the failure to make an arrest, warranted summary judgment in defendant's favor. Id. at 581, 557 A.2d 1045.
We determined in Lee, however, that under the facts presented, the City of Camden was not entitled to immunity under *780 N.J.S.A. 59:5-4. Id. at 576, 557 A.2d 1045. In reaching that conclusion, we relied on our decision in Suarez, supra, 171 N.J.Super. at 8-9, 407 A.2d 1237, and concluded that liability attaches for any negligence in the performance of such ministerial duties. Lee, supra, 232 N.J.Super. at 576, 557 A.2d 1045. The decision in Lee supports our conclusion here that when the City of Newark assigned a 9-1-1 operator to respond to citizen emergencies, the City is liable for any negligence of its 9-1-1 operator in her performance of any ministerial tasks associated with the handling of the emergency call.
We are mindful of the decision in Wuethrich v. Delia, 155 N.J.Super. 324, 382 A.2d 929 (App.Div.), certif. denied, 77 N.J. 486, 391 A.2d 500 (1978)(Wuethrich II), which defendant interprets to hold otherwise. In Wuethrich II, we affirmed the grant of summary judgment to the public entity. Id. at 326, 382 A.2d 929. Citing N.J.S.A. 59:5-5, we held that while "police officers have a duty to investigate information from citizens concerning unlawful or criminal activity, the failure of the police to make an arrest as a consequence [of an investigation] does not subject the municipality to tort liability." Ibid. We further determined that "[m]unicipalities are expressly immunized from tort liability for the failure to provide police protection or the failure to provide sufficient police protection. A public entity such as a municipality is not liable in tort for its failure to protect against the criminal propensity of third persons." Ibid. Defendant's reliance upon Wuethrich II is misplaced.
The analytical underpinning of Wuethrich II was its recognition that police are not obliged to respond to a call for help, and that discretion attaches to a police decision, however erroneous, not to take any action. That, however, is not what happened here. Here, in contrast, the 9-1-1 operator did respond to the call for help that she received from Lester, the off-duty sheriff's officer; however, the operator reacted negligently in the performance of her ministerial responsibility to respond to the 9-1-1 call in accordance with the City's procedural regulations. Her negligence was in the performance of a ministerial task, not a discretionary one. Accordingly, our conclusion in Wuethrich II that a public entity is not liable in tort for its failure to protect against the criminal propensity of third persons must be read in the overall factual context that Wuethrich II presented. There, unlike here, no ministerial decision was involved. Instead, Wuethrich II presented facts that fell squarely within the broad immunity granted under N.J.S.A. 59:5-4 when the police exercised their discretion and ignored reports of a man menacing citizens with a gun. We held that the inaction of police constituted the "failure to provide police protection" for which N.J.S.A. 59:5-4 expressly provides immunity. Ibid. That is not this case. Defendant's and the motion judge's reliance on Wuethrich II is therefore misplaced.
Nor do we interpret the Court's decision in Aversano v. Palisades Interstate Parkway Commission, 180 N.J. 329, 851 A.2d 633 (2004), as requiring a result different from the one we have reached. There, the Court addressed the potential liability of police for undertaking a "recovery operation" rather than a "rescue operation" after learning that a hiker had fallen off a three-hundred foot cliff at Palisades Interstate Park. Id. at 330, 851 A.2d 633. The Court reviewed our decision, which had held that the failure by police to summon the emergency squad was not a "discretionary act that requires a high degree of judgment," but was instead a ministerial act to which liability potentially applied. Aversano v. Palisades Interstate Parkway Comm'n, 363 N.J.Super. 266, 285-86, 832 *781 A.2d 914 (App.Div.2003). We concluded that the immunity otherwise available to property owners under the Landowner's Liability Act, N.J.S.A. 2A:42A-3 (the LLA) and to public entities under N.J.S.A. 59:4-8, a portion of the TCA, should be limited accordingly. Id. at 287, 832 A.2d 914. We reversed the trial court's decision, which had found immunity under both the LLA and N.J.S.A. 59:4-8, and remanded for further proceedings. Ibid.
On appeal, the Court affirmed our reversal of the trial court's grant of summary judgment to the public entity, but modified our opinion. Aversano, supra, 180 N.J. at 333, 851 A.2d 633. The Court's affirmance of our opinion "extend(ed) solely to the question regarding the reach and effect of unimproved-property immunity under N.J.S.A. 59:4-8." Id. at 331, 851 A.2d 633. In particular, the Court agreed with our conclusion that the immunity provided by N.J.S.A. 59:4-8 does not apply "if the cliff's dangerous natural condition was not the sole cause of [Aversano's] death, and the same public entity's acts or omissions contributed substantially to reducing [Averano's] chances of survival." Id. at 331, 851 A.2d 633. The Court reasoned, however, that the balance of our opinion regarding other forms of immunity "was not necessary to decide the discrete legal question whether unimproved-property immunity trumped all theories of liability asserted against defendants." Id. at 332, 851 A.2d 633. The Court modified our opinion accordingly and remanded to the trial court to decide whether other immunities applied. Ibid.
The Court's opinion in Aversano never addressed or analyzed any limitations on the police protection immunity under N.J.S.A. 59:5-4. Nor did the Court express an opinion on the question presented here, or in Suarez and Shore, of whether a public entity is potentially liable for the negligent performance by police of ministerial tasks when that negligence results in a failure to provide police protection. Accordingly, we conclude that the Court's decision in Aversano, 180 N.J. 329, 851 A.2d 633, is not inconsistent with our conclusion here that N.J.S.A. 59:5-4 does not immunize a public entity from liability arising out of the negligent performance of ministerial tasks by police.
We hold that N.J.S.A. 59:5-4 provides no immunity under the facts presented here. The failure of a 9-1-1 operator to abide by the public entity's written guidelines for responding to emergencies constitutes the negligent performance of a ministerial task. "N.J.S.A. 59:5-4 does not insulate police officers from unfortunate results of their negligently executed ministerial tasks." Suarez, supra, 171 N.J.Super. at 10, 407 A.2d 1237.

III.
We have determined that this matter should be reversed and remanded because of the erroneous grant of summary judgment under N.J.S.A. 59:5-4. On remand, the City is free to reargue its summary judgment motion seeking immunity under the 9-1-1 statute, N.J.S.A. 52:17C-10(d). The trial court did not squarely address the City's arguments pertaining to the 9-1-1 statute because the grant of summary judgment in favor of the City on the Tort Claims Act made a definitive ruling on the City's alternate arguments under the 9-1-1 statute unnecessary. We also note that the City did not file a cross-appeal from the judge's failure to rule in the City's favor on the 9-1-1 statute. For all of these reasons, we decline to address the City's arguments respecting that statute, and conclude that the better approach is to permit fuller development of this issue upon remand.
*782 Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] A public official's immunity for discretionary decisions, however, is limited by N.J.S.A. 59:3-2(a), where such immunity depends upon the nature and range of decisions. Morey, supra, 232 N.J.Super. at 152-53, 556 A.2d 811. We need not, however, delineate the outer limits of a public official's immunity for discretionary acts because we conclude that the conduct at issue here was ministerial in nature.