**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0426-21

KATESHA L. SALMOND,

    Plaintiff-Appellant,

v.

NEW JERSEY TRANSIT and
DENNIS MOREJOHN,

    Defendants-Respondents.

_____

Submitted June 8, 2022 – Decided July 14, 2022

Before Judges Gilson and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-8511-19.

Law Offices of James Vasquez, PC, attorneys for appellant (James Vasquez and Paul F. O'Reilly, on the briefs).

Matthew J. Platkin, Acting Attorney General, attorney for respondents (Donna Arons, Assistant Attorney General, of counsel; Michael T. Moran, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Katesha Salmond appeals from the August 27, 2021 Law Division order granting defendants New Jersey Transit (NJT) and Dennis Morejohn, an NJT bus driver, summary judgment and dismissing her personal injury complaint with prejudice. Because the judge misapplied the summary judgment standard and misinterpreted N.J.S.A. 59:9-2(e), we reverse.

We derive the following facts from evidence the parties submitted in support of and opposition to the summary judgment motion, "giv[ing] the benefit of all favorable inferences to plaintiff[ ]." Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)).

According to Salmond's uncontroverted deposition testimony, on the morning of November 13, 2018, Salmond and her two children were traveling to the children's school in Newark on an NJT bus. As the bus approached their stop, Salmond stood up to exit. However, as Salmond attempted to exit, the bus driver suddenly moved the bus forward and then "slammed the brakes," causing the bus to "jerk[] really hard" and Salmond to fall to the floor. Although Salmond was able to exit the bus after her fall, she ultimately called 911 because she was having trouble walking after the incident. An ambulance eventually arrived and transported Salmond to the hospital.

A-0426-21

That same day, Salmond submitted a telephone claim report to NJT describing her fall on the bus. On the same day, Morejohn completed an operator's occurrence report in which he denied having any knowledge of the incident.

At her deposition, Salmond also testified that she underwent physical therapy and chiropractic treatments for months after her fall to address the pain she was experiencing in her neck, back, shoulder, and knee. After those treatments failed to alleviate her pain, Salmond had outpatient surgeries on her back and neck, as well as multiple knee injections. Salmond said the surgeries initially helped, but her pain had since returned. She also detailed functional limitations in her normal activities caused by the injuries.

Salmond filed a complaint in 2019 alleging that NJT and a then unknown bus driver were liable for damages due to injuries she sustained from her fall. In response to interrogatories, NJT initially identified Morejohn as the bus operator in question. However, NJT later asserted, following further investigation, that it was unclear if Morejohn was the driver as he was one of seven possible drivers who could have been operating the bus at the time of plaintiff's fall. By leave granted, Salmond filed an amended complaint adding Morejohn as a defendant.

A-0426-21

Salmond's interrogatory responses revealed that she had incurred approximately $554,000 in medical expenses related to the incident. Although Salmond had health insurance on the date of her fall, her health insurer did not pay any of her medical expenses. It is unclear in the record whether plaintiff submitted her medical bills to her health insurer and whether her insurer would be required to pay her medical claims.[1]

Defendants later moved for summary judgment, which the trial court granted in an August 27, 2021 order. In a written statement of reasons accompanying the order, the judge acknowledged that NJT and its drivers are held to the common law's heightened standard of care for common carriers. See Maison v. N.J. Transit Corp., 245 N.J. 270, 292 (2021) ("We therefore determine that the heightened common-carrier standard applies to public carriers like NJ Transit.").

However, according to the judge, Salmond had not presented any evidence to show defendants had operated the bus negligently. Although the judge agreed that plaintiff's version of the accident was "uncontroverted," the judge stated

---

[1] We note that the trial judge found Salmond did not submit any bills to her health insurer. However, no testimony or certifications in the record specify whether any of Salmond's healthcare providers sought payment from her insurer.

that "[n]othing in the record tend[ed] to indicate the occurrence of such a violent or unusual jerk or jolt" bespoke "negligence in operation."

The judge reasoned:

> If anything, a sudden "jerk or jolt" [on a bus] would imply that sudden and corrective action was taken to prevent the occurrence of an accident, which would support a finding that [d]efendants met the heightened duty of care required of a common carrier. Such "jerks and jolts" are common on a bus ride, and nothing in the record here shows that the movement complained of by [Salmond] that allegedly led to her injuries was more than an event incidental to the normal operation of a bus on an urban roadway.

Additionally, the judge concluded that even if the matter proceeded to trial, "the collateral source doctrine . . . bar[red p]laintiff from testifying in front of the jury regarding her unpaid medical bills." The judge explained Salmond could not "present[] evidence of her unpaid medical bills and recover[] thereupon" because she was entitled to receive benefits from her health insurer for the injuries sustained in the accident "but elected not to." In support, the judge relied on a provision of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, that declares if a claimant is entitled to benefits from a collateral source for alleged injuries, the court must deduct the amount of those benefits from any damage award against a public entity. See N.J.S.A. 59:9-2(e).

A-0426-21

In this ensuing appeal, plaintiff argues the judge erred in granting summary judgment because "a reasonable trier of fact could find that NJT breached the heightened duty of care of a common carrier." Additionally, plaintiff asserts that "because the collateral source rule does not bar presentation and payment of unpaid medical bills," summary judgment was improperly granted.

We review "the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard is well-settled.

> [I]f the evidence of record – the pleadings, depositions, answers to interrogatories, and affidavits – "together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.
>
> [Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (citations omitted) (quoting R. 4:46-2(c)).]

If no genuine issue of material fact exists, the inquiry turns to "'whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting

6

Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).  We "accord no deference to the trial judge's conclusions on issues of law."  Ibid.

Here, the judge misapplied the summary judgment standard by drawing favorable inferences from the record for defendants, the movants, rather than for plaintiff, the non-moving party.  Salmond's uncontroverted account was the only description of the incident in the record, and she maintained that the bus's sudden, forceful stop caused her to fall.  Yet, the judge inferred from that testimony that the bus driver had likely taken "corrective action" to avoid an accident, thus fulfilling his heightened duty of care.  However, there is no evidence in the record to suggest that the driver had stopped the bus suddenly to avoid a collision.

Moreover, a bus's sudden stop that causes a passenger to fall can just as readily be viewed as evidence of operator negligence.  See Model Jury Charges (Civil), 5.73, "Carriers for Hire" (approved June 1988) ("A violent stop, jerk or lurch which would have been unlikely to occur if proper care had been exercised justifies the inference of negligence . . . .").  Accordingly, on this record, the question of whether the driver had operated the bus negligently was a genuine issue of material fact for a jury to resolve.  See R. 4:46-2(c).

A-0426-21

Furthermore, the judge misconstrued N.J.S.A. 59:9-2(e) as precluding Salmond from presenting evidence of or seeking recovery for her unpaid medical bills. N.J.S.A. 59:9-2(e) provides:

> If a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tortfeasor, such benefits shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant . . . .

Accordingly, a public entity may seek credits against a damage award for any payments plaintiffs receive or are entitled to receive from collateral sources for their injuries. See Furey v. Cnty. of Ocean, 273 N.J. Super. 300, 319 (App. Div. 1994). The purpose of the provision is to prevent plaintiffs from receiving duplicate benefits. Sikes v. Twp. of Rockaway, 269 N.J. Super. 463, 466 (App. Div. 1994).

Nevertheless, plaintiffs are not precluded from presenting "evidence of damages for which payment has been received from collateral sources," although they may choose not to do so for strategic reasons. Ibid.; see also Margolis & Novack, Claims Against Public Entities, cmt. to N.J.S.A. 59:9-2(e) (2022) (noting that not "present[ing] evidence regarding damages for which payment has been received from collateral sources . . . would eliminate any

possibility of double recovery").  Plaintiffs must simply disclose any benefits they receive or are entitled to receive from collateral sources for their injuries to the court.  N.J.S.A. 59:9-2(e).

Thus, Salmond is not precluded from presenting evidence of her unpaid medical bills to a jury.  If Salmond receives a damages award, the trial court would then simply deduct any payments she received or was entitled to receive from her health insurer from the final award.  See Sikes, 469 N.J. Super. at 467.

Reversed and remanded for further proceedings.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION