**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0995-23

IQBAL HUSAEEN, MUBARAK
AHMED, MOHAMMED A. RAHIM,
MUHAMMAD MAIN UDDIN,
MOHAMMED MAHBUBUR
RAHMAN, and MOHAMMED MAIN
UDDIN,

     Plaintiffs-Appellants,

v.

MUSLIM UMMAH TRUST, INC.,
d/b/a MASJID AL-HERA,
MOHAMMED EMDADUL HOQUE,
MD ZIAUL ISLAM, MOHAMMED
JASHIM UDDIN, MOHAMMED O.
CHOWDHURY, KAZI ELIAS, NASIR
UDDIN, ABUL KALAM AZAD, MD
SHAFIUDDIN AHAMED, RUHUL
AMIN, ABDUR RAHMAN (TIPU),
HAFIZ NAZRUL ISLAM,
MAHMUDUL KADIR TAFADER,
NAZRUL ISLAM, RIAZ
CHOWDHURY, and HUMAYUN
KABIR,

     Defendants-Respondents.

_____

Submitted December 5, 2024 – Decided February 13, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-3291-21.

George N. Polis, attorney for appellants.

Soliman & Associates, PC, attorney for respondents (Ahmed M. Soliman, of counsel and on the brief).

PER CURIAM

Plaintiffs Iqbal Husaeen, Mubarak Ahmed, Mohammed A. Rahim, Muhammad Main Uddin, Mohammed Mahbubur Rahman, and Mohammed Main Uddin appeal from a May 12, 2023 order that granted defendants Muslim Ummah Trust, Inc., d/b/a Masjid Al-Hera (MUT), Mohammed Emdadul Hoque, Md Ziaul Islam, Mohammed Jashim Uddin, Mohammed O. Chowdhury, Kazi Elias, Nasir Uddin, Abul Kalam Azad, Md Shafiuddin Ahamed, Ruhul Amin, Abdur Rahman, Hafiz Nazrul Islam, Mahmudul Kadir Tafader, Nazrul Islam, Riaz Chowdhury, and Humayun Kabir's application for summary judgment, denied their cross-motion for summary judgment, and dismissed their complaint with prejudice. We reverse and remand for further proceedings.

MUT, a 501(c)(3) nonprofit organization formed in 2008, operates the Masjid Al-Hera Mosque and a community based religious school. At the time

of formation, MUT adopted initial governing bylaws establishing a seven-seat board of directors (board) tasked with effectuating its stated charitable and religious objectives. Six of the founding board members are plaintiffs in this action.

This appeal concerns the propriety of an October 17, 2021 election where, plaintiffs argue, the MUT election committee improperly invalidated votes based on an erroneous interpretation of N.J.S.A. 15A:6-4, by concluding that statute disqualified otherwise eligible candidates who already served six years on the board.[1] We begin by discussing operative sections of the bylaws related to the 2021 election. Section 4.01 of MUT's 2021 bylaws, in pertinent part, provide that:

---

[1] We previously addressed issues related to the governance of MUT. See Muslim Ummah Trust v. Iqbal Husaeen (Husaeen I), A-0130-18, A-0271-18 (App. Div. March 16, 2020) (slip op.); Iqbal Husaeen v. Muslim Ummah Trust (Husaeen II), A-1619-20 (App. Div. July 1, 2022) (slip op.). In Husaeen I, we upheld a June 29, 2018 order of judgment, which nullified a January 2, 2014 board resolution establishing a board of governors, reinstated MUT's original governing documents, and, as relevant here, upheld the board's January 19, 2014 expansion from seven to fifteen members. Husaeen I, slip op. at 3. In Husaeen II, we reversed the trial court's dismissal order and concluded the motion judge misapplied the entire controversy doctrine in dismissing count three of the plaintiffs' amended complaint concerning MUT's alleged default on repayment of certain loans. Husaeen II, slip op. at 3. We also remanded an order directing defendants to pay $7,500 into a trust account for the purpose of satisfying litigation expenses because the motion judge did not provide sufficient reasons or identify the authorities she relied upon in support of her order. Id. at 3, 9.

A-0995-23

The initial directors elected following the adoption of these [b]ylaws shall be elected by the existing [fifteen] board of directors/members at the time these [b]ylaws are adopted. Thereafter, [the] following elected and nominated members will constitute the board of directors:

1. Members shall elect four members of [b]oard of [d]irectors from among the members by secret and direct vote.

2. [The] Local Zone President of Muslim Ummah of North America (MUNA) may nominate [a] minimum [of] two . . . members on the [b]oard with the approval from the National President of MUNA. 3. [The p]resident of the local chapter(s) of [MUNA] will become members of the [b]oard of [d]irectors.

Section 3.12 states "[t]he following corporate actions may not be taken without the approval of the [m]embers: (a) [a] plurality of the votes cast at a meeting of the [m]embers is required for the election of [d]irectors of the [c]orporation."

As noted, section 4.01 authorized only the existing board to elect the new board. Mohammed O. Chowdhury, then chairman of the board, circulated a meeting notice, which set October 17, 2021, as the date for the new board elections. Before the 2021 election could occur, plaintiffs filed an order to show cause and verified complaint on October 12, 2021, seeking, in relevant part, to nullify the bylaws, adjourn the upcoming election until proper rules and regulations were in place, and enjoin defendants from replacing any member of

A-0995-23

the board, and changing the bylaws. For reasons unexplained in the record, it does not appear the court resolved the relief requested in plaintiffs' initial order to show cause.

The minutes from the October 17 meeting, of which, notably, the record contains only page three, evidence that fourteen of the fifteen board members participated in the vote for new board members. Of the fourteen votes cast, the election committee invalidated the votes of six members. As the minutes further explain, "six voters were found not to follow the rules and regulations of the election. They voted six members and those were existing members. So[,] the [e]lection [c]ommissioners declared those votes invalid." Once the remaining eligible votes were tabulated, Ruhul Amin, Abdur Rahman, Hafiz Nazrul Islam, and Mahmudul Kadir Tafader were elected to the board. Nazrul Islam, Riaz Chowdhury, and Humayan Kabir were appointed to the board by operation of sections 4.01(2) and (3).

As best we can discern, plaintiffs filed amended complaints on November 19, 2021, and February 21, 2022, alleging defendants incorrectly applied N.J.S.A. 15A:6-4 resulting in the erroneous disqualification of certain candidates based on the length of their prior service on the board and requested

the court reform or void the election. Defendants subsequently filed a motion to dismiss.

On June 3, 2022, the court held a conference and entered an order memorializing that defendants' motion to dismiss was withdrawn and directed the plaintiffs to file an additional amended complaint setting forth, without reference to the prior pleadings, all claims and include all interested parties. Plaintiffs thereafter filed the court-ordered amended complaint and again asserted defendants misinterpreted N.J.S.A. 15A:6-4 and effectively excluded otherwise eligible members from election to the board. Plaintiffs requested the court void the October 17, 2021, election results, and disqualify defendants from membership on the board. Defendants again moved to dismiss plaintiff's complaint, which the court denied in a September 9, 2022 order.

After defendants filed their answer, the court held another case management conference in February 2021, establishing deadlines for discovery and dispositive motions. Thereafter, plaintiffs moved for summary judgment and defendants cross-moved for summary judgment.

In their Rule 4:46-2 statement in support of their motion for summary judgment, plaintiffs stated defendant MD Ziaul Islam "(and his counsel) . . . believed . . . all plaintiffs were 'time-barred' from being eligible candidates on

6

Oct[ober] 17, 2021[,] to serve on the [b]oard because they all had already served for six years and 'the election was not done within six years as required.'"[2] Plaintiffs argued it was improper for defendants to wrongly inform prospective voters that "[t]he statute forbids . . . plaintiffs from being candidates in that election." Plaintiffs also maintained the election should be invalidated because defendants impermissibly imposed a ten dollar monthly fee to be a member in good standing, a requirement they maintained the board never properly approved.

In opposition, defendants contended the "ten dollar fee [was] not applicable to the election that occurred under [s]ection [four] of the new bylaws" as the board validly passed an amendment stating the "[fifteen] member [b]oard [is] going to do the initial election of our replacement and then, . . . any subsequent election will be done under these bylaws including any requirement that it be a member who is a paying member." Defendants argued the "primary reason [plaintiffs lost the election] . . . was because of all the prior litigation and the fact that the two sides could not get along."

---

[2] We note that the record does not include information, with any degree of specificity, detailing the length or number of terms each plaintiff served on the board.

A-0995-23

Defendants further maintained, however, "under New Jersey law[,] you can't serve for more than six years without an election," and noted plaintiff Husaeen admitted "at his deposition that [an election] did not occur within six years." Finally, defendants argued a trial was unnecessary because the bylaws were properly amended, a simple majority can win an election, plaintiffs lost the election, and neither plaintiffs nor defendants had standing because at the time of the summary judgment proceedings, the organization had a "totally new [b]oard."

As noted, in a May 12, 2022 order, the court denied plaintiffs' motion, granted defendants' motion, and explained its decision in an oral opinion. In ruling on the motion, the court found nothing in the "plain language of N.J.S.A. 15A:6-4 that prevents any of the former [b]oard members . . . from being elected to the new [b]oard . . . so long as the election is consistent with the organization's bylaws." The court held the statute imposes a maximum term of six years for a particular board member but does not limit the number of terms such member could serve. And, "to the extent that anyone at any time thought that the former [b]oard of [fifteen] was disqualified from further service by application of the statute[, that] . . . appears to be a mistake of law." The court also noted the ten

A-0995-23

dollar fee issue did not apply to plaintiffs and thus could not serve to invalidate the election.

The court held, however, any mistake related to the invalidation of any vote did not give rise to a justiciable issue. Relying on Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199, 230 (1960) and New Jersey Democratic Party, Inc. v. Samson, 175 N.J. 178, 187 (2002), the court explained it could not interfere with an individual's reasoning for voting a particular way, irrespective of whether that reasoning is based on a mistaken belief that certain candidates are disqualified, or otherwise infringe on an individual's right to vote for a candidate of their choosing. The court noted, "[p]articularly when the organization in question is a religious one, our Constitution provides for a strict and clear separation between the State and any sort of religious . . . organization." Thus, the court declined to "tell people who participate in a mosque in Atlantic City that they voted wrong."

Lastly, the court explained even if the plaintiffs' votes were counted, they were in the minority and counting those votes would not have changed the outcome of the election. The court found, "whether they voted for themselves and they were disqualified or they voted for somebody else didn't matter because there were six of them and there were eight who carried the day."

9

On June 1, 2023, plaintiffs moved for reconsideration, which the judge denied in a June 23, 2023 order. Also on June 1, 2023, defendants moved for sanctions against plaintiffs' counsel, which was denied in an October 20, 2023 order.

Before us, plaintiffs argue the court erred in dismissing their complaint, asserting the court should have fashioned an appropriate remedy and altered the results of the October 17, 2021 election. Plaintiffs maintain the defendants misled the voters into believing longstanding members of the board were disqualified from reelection by operation of N.J.S.A. 15A:6-4.

Plaintiffs further contend the court erred when it concluded it could not address any impropriety with respect to the election and remedy the mistake of law concerning N.J.S.A. 15A:6-4, without interfering with the voters' free and fair choice in the election involving a religious organization. Plaintiffs also argue the ten dollar monthly fee required to be a candidate was "suspicious," as certain member-candidates wrote ten dollar checks shortly before the October 17 election, a requirement, plaintiffs argue, was neither approved by the board nor required by the bylaws.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221

A-0995-23

N.J. 36, 59 (2015).  Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c).

"If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'"  DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).  We review issues of law de novo and accord no deference to the trial judge's conclusions on issues of law.  Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

After our de novo review of the record, we are convinced genuine and material questions of fact exist as to the bases for the board's decision to invalidate the votes of six individuals, and whether the decision to do so was contrary to N.J.S.A. 15A:6-4.  We also cannot discern from the record support for the court's finding that the invalidated votes would not have affected the

outcome of the election. Accordingly, we reverse the court's order granting defendants' motion for summary judgment and remand for further proceedings.

Plaintiffs correctly posit that the court had authority to address the propriety of an election conducted by a religious organization. As noted, MUT is a 501(c)(3) nonprofit corporation incorporated under the New Jersey Nonprofit Corporation Act and is therefore, governed by N.J.S.A. 15A:1-1 to 16-2. N.J.S.A. 15A:5-23 authorizes the Superior Court to review an election by the members in a

> summary manner, or otherwise, in an action brought by a member entitled to vote at the election upon notice to the persons elected, the corporation[,] and all other persons as the court may direct. The court may confirm the election, order a new election[,] or provide all other relief as justice may require.

> [N.J.S.A. 15A:5-23.]

Thus, the court had the authority to review the election at issue and provide appropriate relief to the extent the election was conducted contrary to the bylaws. See generally Bible Presbyterian Church, Inc. v. Harvey Cedars Bible Conf., Inc., 84 N.J. Super. 441, 450-51 (App. Div. 1964) (holding laws related to religious societies do not apply when the organization chose to incorporate under Title 15).

A-0995-23

Second, we conclude, as did the court, N.J.S.A. 15A:6-4 does not impose term limits on members of a nonprofit corporation's board of directors and any votes invalidated, or candidates disqualified, on this erroneous interpretation was improper. We reach this conclusion after applying well-settled principles of statutory construction.

"Our task in statutory interpretation is to determine and effectuate the Legislature's intent." Newfield Fire Co. No. 1 v. Borough of Newfield, 439 N.J. Super. 202, 209 (App. Div. 2015) (quoting In re Petition for Referendum on Trenton Ordinance 09–02, 201 N.J. 349, 358 (2010)). In doing so, our starting point is the plain language of the statute itself, giving that language its ordinary meaning. McGovern v. Rutgers, 211 N.J. 94, 108 (2014). Only where a provision's language is ambiguous do we look to extrinsic sources, such as legislative history, to glean its intended thrust. See Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009). "[A]n issue of statutory interpretation is a question of law[,]" and our review is therefore de novo, owing no deference to the trial court's legal determinations. McGovern, 211 N.J. at 108.

N.J.S.A. 15A:6-4(a) states:

> [a]s to trustees to be elected by the members or by the board of trustees, a corporation may provide in its certificate of incorporation or its bylaws for the classification of its trustees in respect to the time for

which they shall severally hold office, but a class of trustees shall not hold office for a term shorter than [one] year or longer than [six] years. The term of office of at least one class shall expire every [two] years. A classification of trustees shall not be effective prior to the first annual or biennial meeting of members or the board of trustees.

In giving the words of the statute their plain meaning as required by the above-cited legal principles, it is clear the statute does not impose term limits on members of a nonprofit organization's board of directors. A plain reading of this statute indicates that a trustee, or as described in this case, a director, shall not serve a term longer than six years. It does not impose a limit on the number of years, or the number of successive or nonconsecutive terms an individual director may serve on the board but rather requires a party to sit for reelection before serving an additional term. Nor does the statute contain any ambiguous language, which would require an investigation into extrinsic sources, such as legislative history, to glean its intended thrust. See Bosland, 197 N.J. at 553.

The record before us contains conflicting evidence as to the board's reasons for invalidating the election at issue. Indeed, the minutes of the October 17 election do not state a reason for invalidation past a statement indicating those voters did not "follow the rules and regulations of the election" as they "voted six members and those were existing members." To the extent the board's

14

decision, as reflected in the limited materials before us, was based on an incorrect interpretation of N.J.S.A. 15A:6-4, it would have been improper. Simply put, further development of the record is necessary to discern the reason for the board's decision.

We also part ways with the court's finding that the invalidation of the votes was inconsequential to the results of the election as it presumes unanimity among the two voting factions that the judge classified as the majority and the minority. There is simply not enough information in the record, which lacks ballots, a roster, or any other documentation showing the tabulation of the votes to make such a definitive conclusion.

Finally, we are satisfied, based on the record before us, that plaintiffs' challenges do not relate to the "linguistic shortcomings in the electorate . . . [or] hypothetical confusion" of the voters in choosing their preferred candidate. See Two Guys from Harrison, 32 N.J. at 233. Instead, we addressed the concerns related to the board's alleged improper disqualification of certain votes. Also, the court's discharge of its authority under N.J.S.A 15A:5-23 was not contrary to New Jersey Democratic Party, Inc., 175 N.J. at 187, which quoting Reynolds v. Sims, 377 U.S. 533, 555 (1964), noted "[t]he right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any

restrictions on that right strike[s] at the heart of representative government." Rather, the court was ensuring that an individual's vote was not impermissibly annulled, which is consistent with the principles detailed in New Jersey Democratic Party, Inc., 175 N.J. at 187.

On remand, the court may direct the parties to provide it with additional, competent submissions to address the outstanding factual issues which we have detailed, reopen discovery, or conduct a plenary hearing, as necessary and appropriate. Once the factual record is complete, the parties may renew their dispositive motions, and the court shall thereafter provide appropriate supplemental factual findings and conclusions of law.

To the extent we have not addressed any remaining arguments, including plaintiffs' contentions regarding the impropriety of the $10 monthly fee, it is because we have determined those arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0995-23